MONTGOMERY COUNTY v. THE AMERICAN EMIGRANT COMPANY.

1. **Judgment:** VACATION OF: ATTORNEY. It constitutes good ground for vacating a judgment rendered by default, that the attorney of the losing party was, after his employment, so ill that forgetfulness of the fact could not be imputed to negligence.

2. **Principal and Agent:** LIABILITY OF AGENT: SWAMP LANDS. The plaintiff agreed to convey its swamp lands and assign the residue of its swamp land claim and interest to defendant, for an agreed consideration. After the contract was made S., who was in the employ of defendant, was constituted the agent of plaintiff, and,. as such agent, collected an amount of indemnity for plaintiff, which he paid over to defendant. *Held:*

    1. That, even though the contract between the plaintiff and defendant · was invalid, yet S. was bound to exercise only reasonable care and diligence, and, before he could be charged with the money paid to defendant, he must be shown to have had knowledge of the invalidity of the contract, or to have been likely to acquire such knowledge in the exercise of reasonable care.

    2. That, while S. was nominally collecting the money for plaintiff, he was, really, under the contract, collecting. it for defendant, and was justified in supposing he was authorized to pay it to the latter.

3. **Contract:** MISTAKE OF FACT. A contract was entered into between a county and another, by which the county assigned its swamp land interests for the consideration of three thousand dollars. Before the contract was made, the county had been allowed scrip indemnity to the amount of 4,730 acres, although its officers were, at the time, ignorant of the fact. *Held:* That the contract being made under a mistake of fact, which was a material one, it should be set aside.

·4. **Practice in the Supreme Court:** PLEADING: ABSTRACT. Even though a fact relied upon by one of the parties, and material to sustain his claim for relief, be insufficiently pleaded, yet if evidence be introduced on the trial to support it, without objection from the other side, as disclosed by the abstract, the court will not go outside of the abstract to receive an objection to such evidence, and make it a ground for the rejection thereof.

*Appeal from Montgomery District Court.*

FRIDAY, OCTOBER 19.

ACTION in equity to set aside a contract between the plaintiff and the American Emigrant Company, and a deed from plaintiff to said company; to quiet in the plaintiff the title to certain lands, and to require the defendant, Savery, to account for certain money received by him. The facts are stated in the opinion. The district court set aside the contract and deed, quieted the title to the lands in the plaintiff, but did not render judgment against Savery for the money received by him. Both plaintiff and American Emigrant Company appeal, the plaintiff perfecting its appeal first.

*F. M. Davis* and *Mayne & McPherson*, for appellant.

*J. A. Harvey* and *Nourse & Kauffman*, for appellee.

ADAMS, J.—I. Judgment was rendered in this case by default against the defendant, Savery, for the sum of $9,957, for money received by him as agent of the plaintiff, and against the defendant, Allen, as his surety. Afterward, the said Savery and Allen filed a petition to set aside the default, and set up in said petition, by way of defense, and among other things, the statute of limitations. The default was set aside and the judgment vacated, on the ground that the claim was barred by the statute of limitations. To the action of the court in this respect the plaintiff excepted.

It is claimed that, in the first place, no sufficient excuse was shown. The facts are as follows: Nourse & Kauffman were

1. JUDGMENT: vacation of: attorney.

employed as attorneys by said Savery and Allen; the original notice was delivered to Kauffman, who alone was spoken to in the case, Nourse being absent; Kauffman was, at the time, in ill health, and able to attend to but very little business; before Nourse returned Kauffman was taken violently sick, and was confined to his bed; before default was taken he partially recovered, and was able to inform Nourse that they had been employed in this suit, but failed to

do so; the question is whether he was guilty of negligence. In regard to his condition, his physician testifies as follows: "He (Kauffman) was delirious part of the time; he was not competent to attend to business; I prohibited him from attending to business, or parties from talking to him on business." The prohibition imposed upon him by his physician included, necessarily, an injunction to dismiss his business from his mind. In so doing, he was not in fault. It is true he became convalescent before the default was taken, but his recovery, even then, may have depended upon a sense of freedom from care and responsibility. It is not claimed that he was able to do much before the default was taken. We do not think, therefore, that the district court erred in holding this excuse sufficient.

The plaintiff further claims that the default should not have been set aside, even upon a sufficient excuse being shown, to

2. PRINCIPAL and agent: liability of agent: swamp lands.

admit the plea of the statute of limitations. But Savery set up other defenses, and if the evidence sustains any one of them the decree should stand, even if the court erred in the ground upon which it was rendered. The money in question was swamp land cash indemnity. It was paid by the United States to Savery, as agent for the plaintiff, and was by him paid to the American Emigrant Company. Previous to this time the plaintiff was the owner of certain swamp land and certain swamp land claims, and cash and scrip indemnity claims against the United States, and, being such owner, it entered into an alleged contract with the American Emigrant Company for the sale of the same to said company. The alleged contract states as follows: "That the county of Montgomery agrees to sell and convey to the American Emigrant Company all vacant swamp lands owned by the county, being 412 acres, at the price, to be therefor, of one dollar and twenty-five cents per acre. The said county further agrees to sell, assign and release to said company all the rest and residue of the swamp land claim and the swamp land interest of said county, in law and in equity, of whatever the same may consist, and to as full and to as great an extent

as the county may hold or be entitled to the same, at and for the further sum of $3,000."

The contrast was executed on the 18th day of April, 1863, and was signed by William T. Reid, as president, and W. W. Merritt, as clerk of the board of supervisors, and is the contract for the cancelation of which this action was instituted. The money in question was received by said Savery upon the claim therein mentioned, and was paid by him to the said American Emigrant Company, as belonging to said company by reason of said sale. The District Court canceled the contract as being invalid, but refused to render judgment against said Savery for the said money received by him, and paid to said company, holding that the plaintiff's claim to recover such money was barred by the statute of limitations.

Savery sets up in addition to the plea of the statute of limitations that "relying upon said contract and the good faith of the plaintiff, he paid over said funds to said American Emigrant Company with full knowledge and consent of the officers and agents of the plaintiff, and upon the representations of plaintiff in said contract, and by its officers, that it had sold and transferred all its interest in said funds to said company."

It is contended by the plaintiff that if the said contract is invalid, as the court held, the said Savery could not rely upon the representations of the plaintiff therein that it had sold and transferred all its interest in said funds to said company, because the execution of the alleged contract was not the plaintiff's act.

To this it may be said that Savery was bound to exercise only reasonable care and diligence. The paper upon its face appeared to be the contract of the plaintiff. If it was executed without authority of law, or under a mistake, it was the fault of the board of supervisors, and their president and clerk, and not Savery's fault. If there was any fault on his part, it was either in paying the money with knowledge of the invalidity of the contract, or in ignorance of it, but under such circumstances that his ignorance was not excusable. To our mind the evidence fails to show either that he had knowledge of the

invalidity of the contract, or would have acquired such knowledge in the exercise of reasonable care.

In this connection it should be said that at the time Savery paid the money the contract had not been repudiated by the plaintiff, nor, so far as we have been able to discover, had any question in regard to its validity arisen. Indeed, more than a year after the payment of the money the board of supervisors recognized the validity of the contract by causing to be executed to said company a deed of over eighteen thousand acres of land, in pursuance of the provision of the contract.

It is urged by plaintiff that Savery was appointed to collect the money, and not to pay it out, and that in paying it out he paid at his peril. But it is averred in the petition that Savery was agent of said company, and procured himself to be appointed agent of the plaintiff. The said contract provides that "the county will appoint all and any agents the company may request, to transact any business relating to said lands, claim or interest, such agents to be paid by the company, and the company alone to be responsible for their acts and fidelity."

It appears, therefore, that the understanding was that while Savery was nominally collecting the money for the county, he was really collecting it for said company, and that he was justified in supposing that he was authorized to pay it to said company.

Whether the company became liable it is not necessary to inquire. On the 29th day of May, 1872, the District Court rendered a decree against the company canceling the said contract and deed, but did not render a decree against the company for said money. That decree was never appealed from, nor was it ever set aside or modified, so far as said company was concerned.

II. The said company appeals from the decree of the District Court canceling the said contract and the deed made in pursuance of it. But in our opinion the decree is correct. The contract was, we think, made under a mistake of fact. A few days before it was made there was allowed to the plaintiff 4,730 acres of scrip indemnity. The board

3. CONTRACT:
mistake of
fact.

of supervisors supposed, and had reason to suppose, not only that no such allowance had been made, but that it was doubtful whether it ever would be made. One witness says: "McKay (the company's agent) represented to the board at the time of the contract that the claim was unadjusted; that it would likely be a long time before it would be finally adjusted and attended with considerable expense." Another witness says: "McKay said at the 18th of April, 1863, meeting (being the meeting at which the contract was made) that it was very doubtful whether the county would ever get anything from Washington on their claims." Another says: "McKay represented that the claims were all doubtful; that it would be a great expense to the county to prosecute them, and then it might get nothing. He did not state positively, but he said he did not think the county would realize anything. He said their agent was posted and understood the intriguing and wire-pulling about Washington better than any one unless he was there and posted."

As to whether the fact that the board of supervisors were ignorant of the allowance of the scrip indemity was a material fact, the chairman of the board in his testimony says: "I did not know, nor did the board know, at the time of the contract, that any indemnity had been allowed the county. If I had I would not have consented to the sale." Another witness says: "If I had known at the time that there had been an allowance I, as a member of the board, would not have contracted." Another says: "At the time the contract was made the members of the board had no knowledge that there had been allowed and paid over to the Governor 4,730 acres of scrip indemnity." This testimony is credible from the fact that by the contract, if it is valid, the county sold for $3000 four thousand seven hundred and thirty acres of scrip indemnity already allowed, and a claim for cash indemnity which resulted in the realization of over $10,000. We think that the evidence abundantly establishes that the contract was made under a mistake of fact, and that the mistake was a material one.

It is contended, however, that even if this is so the contract was afterwards ratified. On this point the evidence does not

satisfy us that the alleged acts of ratification were done with full knowledge of the material circumstances.

We are of the opinion that on both appeals the case should be

AFFIRMED.

ON REHEARING.

ADAMS, J.—I. It is insisted by the county that whether Savery was liable to account or not for the money received from the United States upon the claims which were collected, the American Emigrant Company certainly was.

Service of notice was had upon the company, but no appearance was made. Decree was taken against the company canceling the deeds made by the county to the company, but no decree was taken against the company for the money collected. In not rendering a decree against the company for the money, it is claimed that the court below erred. We were of the opinion that such error, if any, was not reviewable by us, for the reason that it does not appear that the county appealed from that decree. To this it is said by the county that it could not appeal from that decree. In the first place, it is said the county was enjoined from appealing; and in the second place, that the decree was not final. An injunction suit was indeed brought against the county, and a writ of injunction issued, but the writ simply restrained the county from enforcing the decree which it had obtained, and not from seeking by appeal to obtain a better decree. As to the position that the decree was not final, we have to say that we think that this is equally untenable. It is urged, as showing that the decree was not final, that the petition set up a money claim against the company, and that the petition as to such claim was not dismissed. It is true that the petition as to no part was formally dismissed. But the court found that all the allegations of the petition were true; canceled the deeds which had been made to the company, and did not continue the case as to the company. The presumption is that the court granted all the relief which it thought that the county by its petition was entitled to. Indeed, as the court found all the allegations of the petition to

be true, it is impossible to suppose that anything remained between the parties before it to be adjudicated.

The case was, it is true, continued as to one Palmer. Our attention is called to this fact as showing that the decree was not final as to the company. Palmer was simply a surety on Savery's bond. The case was continued as to him because he had not been served with notice. But the determination of the liability of the company was in no way dependent upon Palmer's being made a party.

II. The company, upon the rehearing, has insisted upon the following propositions:

" 1. The mistake upon. which the decision of the court is based is not pleaded by the plaintiff. ·

" 2. The contract is severable and the alleged mistake which is made the basis of the decision should not affect the title to 412 acres of lands in place, bought at $1.25 per acre.

·" 3. The plaintiff, by deed executed under circumstances which charged it with knowledge of the alleged mistake, ratified and confirmed the contract.

" 4. The decision sets aside the contract and deed herein, without reservation of the rights of innocent purchasers of the American Emigrant Co., under said contract and deed."

These propositions we will consider in the order in which they have been stated:

1. The mistake, so far as it is alleged in the petition at all, is alleged in these words: "The agreement was made while both parties were mistaken in fact, as to the quantity of property conveyed, and the value of the claim sold and the amount thereof." It is further alleged that the deed was made "from a misapprehension of the facts attending the execution of said agreement, and in ignorance of your orator's rights therein."

4. PRACTICE in the supreme court: pleading: abstract.

That that is a sufficiently specific pleading of the mistake insisted upon by the county, and made the basis of our decision, can hardly be claimed. But the parties seem to have treated it as sufficient. A large amount of evidence was introduced to prove the mistake, and, so far as the abstract shows, no objection was made by the company that

there was no allegation in the petition under which the evidence was admissible.

It is insisted now, however, upon the rehearing, that an objection appears in the depositions transmitted with the clerk's certificate. It is not our practice to look beyond the abstract where a case has been argued and submitted with the apparent understanding that the abstract contains all that is material to its determination. Without saying that we could not in any case properly depart from such practice, we see nothing in this case to justify us in doing it. The objection to which our attention has been called is that the evidence is immaterial, and incompetent. The objection so stated appears to us not well taken. The evidence constitutes ground for the cancellation of the contract. To the plaintiff's relief then it is not immaterial. The most that can be said is that it is immaterial to the issue. With this view the objection might be considered as well taken, if no allegation whatever of a mistake had been made. But there is an allegation of mistake, as we have seen, although defective. Was the objection, as made, calculated to suggest the defect to the court, or opposing counsel? We think not. It does not indeed seem probable that such was the intention of the counsel who made the objection. We do not, therefore, feel at liberty to reject the evidence, and especially for the purpose of opening the way for the modification of a decree which we think does substantial justice between the parties.

2. Is the contract severable so as to justify us in sustaining it as to the 412 acres of land in place, and setting it aside as to the balance? The contract contains the following: "The county of Montgomery agrees to sell and convey to the American Emigrant Co. all the vacant swamp lands owned by the county, being 412 acres, at the price to be paid therefor of $1.25 per acre, making $515. The county further agrees to sell, assign and release to said company, all the rest of the swamp land claim and the swamp land interest of the county * * * * for the further price, sum and consideration of $3,000."

From the language above quoted, it might seem that the contract is severable as the company claims, and yet it might

well be doubted upon consideration of the subject matter of the contract, and the supposed necessity of draining the swamp land, whether the county would have sold the 412 acres, at that price, except with the view of disposing of its entire swamp land interest. There is, however, a more cogent reason for holding the contract not severable. The $3,515 was not the entire consideration moving to the county. As an additional consideration it is provided that "the company agrees to save the county harmless from the contract of Messrs. Ellison & Cooper, heretofore made for the purpose of obtaining the indemnity due the county from the United States."

It appears that Ellison & Cooper had been previously employed by the county, and had rendered service for the county, for which the county had become liable. This liability the company by its agreement assumed, and such agreement, as we construe the contract, was a part of the consideration moving to the county for both the land in place and for the swamp land claim.

3. The ratification of the contract is based by the company upon the execution of the deed by the county, in 1866. To be such, it must appear of course that at the time the deed was executed the county officers had knowledge of the mistake. The company insists that they had such knowledge. The mistake consisted in selling a large amount of scrip indemnity as a contingent claim, when in fact it was not contingent, having been allowed at that time. It is said that before the deed of 1866 was executed the county officers must have known the date of the allowance, and should have compared it with the date of their contract, and that they must be presumed to have done so, and to have discovered that the scrip indemnity had been allowed when the contract was made. The ground for saying that the county officers must have known the date of the allowance is that a patent had been executed for the county by the Governor of Iowa, in which the date of the allowance is recited. But there is no evidence as to when the patent was delivered. It was by law the duty of the register to deliver it. This he should of course have done within a reasonable time. It is insisted that he

had a reasonable time to deliver it before the execution of the deed of 1866, and that we must presume that he did. But such presumption, if it could be held to exist, would not be sufficient to affect the county in this case. It is the duty of a sheriff to use proper diligence in the service of an original notice, but no one would claim that the fact of service in a given case could be proven by a presumption that the sheriff did his duty.

It would serve no useful purpose to consider in detail all the evidence relied upon by the company as showing that the county officers who executed the deed of 1866 knew, at the time, the date of the allowance of the scrip indemnity. We are satisfied that they did not know it.

Much of the argument for the company seems to be based upon the idea that whether they knew it or not they might and should have known it, and that that is sufficient; but that position cannot be maintained. The county was under no obligation to the company to exercise diligence in that respect. The company knew well the date of the allowance of the scrip indemnity. It was procured by the company's agent. It knew that the contract was made under a mistake of a material fact. Had it disclosed the fact to the county and offered to allow the contract to be rescinded, it would have obeyed no higher code of morals than is recognized by many a person. It is not, therefore, for the company to say that the county might have discovered the mistake. In making a contract, the law, to be sure, contemplates that the parties will exercise reasonable diligence to guard against fraud, but in performing a contract no such diligence is required to discover either fraud or mistake as a ground for rescinding it.

4. It is urged finally that the decree purports to cut off the rights of innocent persons not parties to the suit, who have purchased from the company. As between the county and the company, we see no occasion for modifying the decree in that respect. The decree cannot affect persons not parties to the suit. What their rights may be, it will be time enough to determine when in a proper action their rights are assailed.

We adhere to our opinion already filed.