## R. H. LOCKWOOD v. MILTON W. HALSEY.

1. REAL-ESTATE AGENT—*Commission.* A real-estate broker is entitled to the commission agreed upon for the successful negotiation of an exchange of property placed in his hands if the terms of exchange are accepted by the owner, as the obligation to pay the commission then becomes fixed.

2. ———— *Recovery of Commission Paid—Evidence.* Where, after the confirmation of such sale, the owner pays to the broker the commission agreed upon, and afterward discovers that the title to the land he has received in exchange is defective, and the representations made as to the situation and value are false, *held*, before he can recover from such broker the commission so paid for the exchange, he must further show that the broker acted in bad faith, and concealed from him information possessed by such broker in regard to the title, situation and value of the land.

3. ———— *Duty of Agent.* Where a real-estate broker undertakes to furnish a purchaser, he is bound to act in good faith in presenting a person as such; and when one is presented, the employer is not bound to accept him, nor to pay the commission, unless such purchaser is ready and able to perform the contract on his part according to the terms proposed.

*Error from Harper District Court.*

ACTION brought by *Milton W. Halsey* against *R. H. Lockwood*, to recover $960 and interest, paid by Halsey to Lock-

wood as commission on an exchange of lands. The evidence shows that in 1883 Halsey was the owner of a large tract of land in Harper county, Kansas, and placed the same with Lockwood, a real-estate broker, for sale or trade, the contract being in writing, and is as follows:

"I, the undersigned, Milton W. Halsey, postoffice Anthony, county of Harper, Kansas, have this day placed for sale in the hands of R. H. Lockwood, of Anthony, Kansas, as my agent, the following-described property, to wit, secs. 22, 27, 21 and 28, and N. $\frac{1}{2}$ sec. 23, T. 33, R. 9 west, Harper county, Kansas, and hereby authorize and empower him to sell the same for $11,520, on the following terms: $6,500 on time, 8 per cent. interest, and balance cash, or to trade for property approved by the said Halsey. And if a sale of the said property is effected by him, and at the price and on the terms stated above, or if I sell it myself to any person whom said agent may send or direct to me, or who through his instrumentality shall be sent or directed to me, within three months from the date hereof, I agree to allow and pay said agent a commission of ten per cent. on such sale; and in case I sell said property myself, during the continuance of this agreement, without the aid of said agent, and to a person not sent or directed to me by him, I will pay said agent full commission of ten per cent., and I hereby agree to give said agent immediate notice of said sale, and also the name and residence of the purchaser.

"And I further agree that in case I withdraw said property, or any part thereof, from sale before the expiration of said term of three months, I will give said agent immediate notice of such withdrawal, and will pay him a reasonable compensation, full commission, for his trouble and expenses of advertising and otherwise calling attention to said property.

"My said agent is hereby authorized to enter into a written contract for me, in my name and on my behalf, for the sale of said property upon the terms above specified, with any party or parties, and I hereby agree and bind myself to make a good and sufficient deed or deeds to the party or parties to whom said agent may sell on compliance with the terms of this agreement. And I hereby further agree to hold said property at the price above named during the term above specified, and if I, myself, sell it to any person or party at any less price, or on any more favorable terms than those above named, or authorize any other agent or agents so to do, then and in that case I agree to pay said agent R. H. Lock-

wood full commission on any such sale by myself or other agent or agents.

"In witness whereof, I have hereunto set my hand, this 1st day of January, 1883.'                    M. W. HALSEY."

Lockwood found a man in Ohio by the name of Graham who desired to trade a tract of land in Tennessee, claimed to be owned by him, for land in Kansas, and a correspondence was opened between Graham and his agent and Lockwood for the trade of Halsey's land. After considerable correspondence, an offer was made for an exchange of the lands, which was submitted to Halsey, and finally accepted by him. No meeting of the parties ever took place, and the whole arrangement was made by correspondence. When arranging for an examination of the title to the Tennessee land an agreement was reached between Halsey and Lockwood by which Lockwood was to write to some bank in Cincinnati, Ohio, and obtain the name of some reliable lawyer to whom the abstract of the Tennessee lands might be submitted, which Lockwood did, and the abstract furnished by Graham was submitted and examined and declared correct by the attorney so recommended by the bank, and afterward the abstract was submitted to Halsey and he directed an exchange of papers, which was done, and the transfer duly made. Afterward Halsey paid Lockwood $960, the amount of the commission agreed upon. Some time afterward Halsey went to Tennessee and there learned that there was a defect in Graham's title to the land, and that the land was not situated as represented, and was incumbered and of little value; and upon this information he brought suit in Harper county against Graham, in which he succeeded in having the deed from him to Graham set aside, and recovered the possession of the Harper county land. This action was tried by the court, at the April term, 1886. Plaintiff introduced his testimony and the defendant demurred thereto, which demurrer was overruled by the court, and the defendant elected to stand by his demurrer. Judgment was rendered for the plaintiff for the amount paid as com-

mission and interest.   To reverse this judgment the defendant brings the case here.

*R. B. Shepard,* for plaintiff in error.

*Hatton & Ruggles* and *Geo. R. Crooker,* for defendant in error.

Opinion by CLOGSTON, C.: A great many errors are assigned, but as a review of the ruling upon the demurrer to the plaintiff's evidence will reverse the case, no attention will be paid to the remainder of the alleged errors.   The record presents no claim of fraud on the part of Lockwood in the transaction, neither is there any evidence to show that Lockwood possessed any knowledge or information as to the situation, condition, or title to the Graham land in Tennessee, except what he gathered by correspondence with Graham and his agents, and there is no claim but that all of such information and correspondence was submitted to Halsey, and no suggestion anywhere that shows bad faith on the part of Lockwood.   This being so, but one proposition remains: Is a real-estate broker an insurer of the title where an exchange of lands is made by him?   In other words, did Lockwood contract or agree that the representations made by Graham or his agents in relation to the land were true, or does the law impose such a burden upon an agent?   The rule seems to be well settled by authority and good reason, that to entitle a real-estate agent to his commission in a sale or exchange of lands, it is only necessary for him to furnish a purchaser who is willing to purchase or exchange upon the terms and conditions agreed to or proposed by the seller.   This would *prima facie* entitle the agent to receive a commission.   Where such a proposition is not accepted by the owner of the land, then before an agent can recover his commission he must still further show that the purchaser he has found is willing and able to purchase or exchange upon the terms offered by the owner of the land. (*Hamlin v. Schulte,* 27 N. W. Rep. 303; *Stewart v. Murray,* 92 Ind. 543; *Moss v. Bierling,* 31 N. Y. 462; *Mooney*

*v. Elder,* 56 id. 238; *Gillett v. Corum,* 7 Kas. 156; *Short v. Millard,* 68 Ill. 293; *McGavock v. Woodlief,* 20 How. S. C. 221; *Coleman v. Meade & Co.,* 13 Bush, 358; *Redfield v. Tegg,* 38 N. Y. 212; *Rees v. Spruance,* 45 Ill. 308; *Potvin v. Curran,* 13 Neb. 303; *Montgomery & Co. v. Am. Emigrant Co.,* 47 Iowa, 91; *Fraser v. Wyckoff,* 63 N. Y. 445; *Everhart v. Searle,* 74 Pa. St. 256; *Fisk v. Henarie,* 9 Pac. Rep. 322.)   But where they are brought together in person or by correspondence, and the purchaser is accepted and the exchange is authorized, the principal at the time being in the possession of all the knowledge and facts known to the agent, and the whole transaction on the part of the agent is done in good faith, so far as the agent is concerned the transaction is completed, and he has fully earned his commission, although afterward it may turn out that there is a defect in the title and quality or condition of the land.   In this case Halsey accepted the trade and directed the exchange of papers with a full knowledge of all the facts possessed by Lockwood; and applying the rule established by the authorities to these facts, we must conclude that the court erred in overruling the demurrer to the plaintiff's evidence, as the evidence offered by the plaintiff discloses no cause of action.

It is therefore recommended that the cause be reversed, with the direction to the court below to sustain the demurrer.

By the Court: It is so ordered.

All the Justices concurring.