J. R. HORNE *et. al.*, plaintiffs in error, *vs.* THOMAS YOUNG *et. al.*, defendants in error.

In 1864, the holder of a promissory note, made in 1860, at the demand of the security, gave up the note and took from the principal a new note, with other security, which last note was to be paid in Confederate money: *Held*, that this was a new contract, and the amount due thereon is to be ascertained under the Ordinance of 1865, relating to contracts made during the war.

2. *Held, further*, That in adjusting the equities between the parties, the jury may look into the original consideration, the value of the old note, at the time of the new contract, and the different relation of the principal and securities to that consideration, and should the evidence so authorize, they may, under our law, find a verdict for one amount against the principal, and another against the securities, accordingly as they may find the true equities of the parties.

3. In cases arising under the Ordinance of 1865, for the adjustment of Confederate contracts, either party may be a witness, notwithstanding one of the contracting parties is dead.

Novation.    Evidence.    Scaling Ordinance.    Security, etc. Before Judge COLE.    Dooly Superior Court.    October Term, 1869.

Young and his wife, formerly Loduska P. Walters, sued said Horne, A. J. Pound and James O. Farrell, upon a promissory note for $1,277 85, made by said defendants, in February, 1864, and payable one day after date, to Irwin Bullock, guardian of said wife; and Young, as guardian of D. M. Walters, sued said defendants on another note exactly like the other, except that it was payable to Bullock, guardian of D. M. Walters. Horne and Pound were served. They pleaded, 1st, the general issue ; 2nd, that it was expressly agreed by and between said Bullock and Horne that said notes should be discharged by bonds of the Confederate States, and that, in pursuance and performance of said agreement, Horne, by selling his property, procured Confederate Treasury notes, and, by direction of Bullock, converted them into Confederate certificates, and held them for Bullock's use, but did not convert them into bonds, only because the Confederate States never issued the bonds called for by the cer-

tificates ; 3rd. Pond pleaded that he and Farrell were but securities for Horne, on said notes, and became such upon the express understanding and agreement with Bullock, aforesaid, and that Horne performed said agreement, as aforesaid ; 4th, that, at the date of the notes, they were worth $13,950 00, that since that time they had lost $11,000 00 worth of property, without their fault, and claimed the benefit of the "Relief Act" of 1868.

By consent, the two cases were tried together. Plaintiffs' attorneys read in evidence the notes, and closed. The defendants' attorneys offered to prove by the defendants that the facts stated in the 2nd, 3rd and 4th pleas were true. It being admitted that Bullock was dead, the Court held them incompetent witnesses. It was then shown that Bullock, as guardian of said Loduska and D. M., in 1859, or 1860, took Horne's note, with one Collier for security, that in the latter part of 1863 he received a part of what was due on said note, and the balance was tendered to him in Confederate Treasury notes, that Bullock refused to accept said tender, but promised to release Collier, if Horne would give other security, that the notes sued on were given for said balance, to relieve Collier from his suretyship, and that Bullock, after these notes were made, said that it was understood that they were to be discharged as pleaded above. The loss of property, in amount about as pleaded, was shown ; Confederate Treasury notes were shown to have been worth, in specie, but one-twentieth of their nominal value, at the date of the notes, and it was shown that on the 15th of March, 1864, Horne did procure a certificate from the agent of the Confederate States, showing that he, Horne, was entitled to four per cent. bonds of said government, for $3,500 00, so soon as they were issued. It was also shown that Horne sold provisions to a purchasing agent of said government, for Confederate Treasury notes, early in 1864, and that Young had no interest in the notes, except as husband in one case, and guardian in the other.

The Court charged the jury that if these notes were in renewal of a note made in 1859, or 1860, plaintiffs should recover the full principal and interest called for by the faces of .

Horne *et al.*, *vs.* Young *et al.*

the notes; that Bullock, as guardian, had no right to convert the money of his wards in Confederate securities, without an order of Court, and, that in the absence of said order, they should find for the full amount of said notes, notwithstanding any agreement to accept such securities, in satisfaction of said notes; that, under the Ordinance of November, 1865, a contract in renewal of a contract which existed before June, 1865, could not be "scaled;" that these notes were neither a novation of the contract of 1859, or 1860, aforesaid, nor could they be treated as an accord and satisfaction.

The jury found for the plaintiffs, against both defendants, for the full amount of each note, and costs. Defendants' counsel say the Court erred in holding said defendants incompetent because Bullock was dead, and in each clause of his charge.

PATE & RYAN, S. ROGERS and S. HALL, for plaintiffs in error, said defendants were competent under the Ordinance of 8th of November, 1865, under section 5 of the "Relief Act" of 1868, and under section 1, of Act of 18th December, 1866; guardians could invest ward's funds, in Confederate securities: Act 18th April, 1863, Acts December 1861 and 1863, and 21st March, 1864, Ordinances 6th and 8th, November, 1865, Campbell vs. Miller, 38th Ga. R., 304. The security could not be bound further than he agreed to be: McMicken vs. Webb *et. al.*, 6 How. R., 298; Struman vs. Magnus, 11 East., 390; Sláughter vs. Culpepper, 35th Ga. R., 25. As to accord and satisfaction: Irwin's Code, sections 2682, 2125, 2827, 2830; 20th John R., 76; 1 Wend. R., 172; 3 Wend. R., 68, Bou. Ins., 310, 1 Domat, 914; 1 Poth. on Ob., 339, *et. seq.*, 343.

W. A. TIGNOR and JAMES ARMSTRONG, for defendants, said this was not a novation, nor accord and satisfaction: Ir. Code, sections 2682, 2125, 2707, 2709, 2827, 2830, 5090; 1 Bou., 310; 26th Ga. R., 537; 13th Ga. R., 406; the Acts cited did not allow the investment by guardians, as claimed, and were passed to protect them against their wards; that the defendants were incompetent under the Acts and Ordi-

nances cited, and even if the Court erred, there was no defense and the verdict should stand: 20th Ga. R., 170; 28th, 25; 30th, 560.

McCay, J.

1. In no fair sense, especially as against the security, can this be considered a simple renewal of the first note. A new party has been introduced, and one of the original parties has been dropped out. It comes almost exactly within the definition of a novation, as given in section 2652 of the Code. It is a new contract, because different parties promise to pay it. It is, therefore, especially as to the security, a contract made between 1861 and 1865, and comes within the Ordinance of 1865.

2. The Ordinance of 1865 is based upon the idea that all contracts made within the period it covers were intended to be discharged in Confederate money; at any rate that is one of the leading ideas that was in the mind of the Convention. When the Confederacy went to pieces it became necessary, for the purposes of justice, to pass some law to regulate the value of contracts made under such circumstances. It was impossible to carry them into effect as the parties intended, and very wisely, as we think, the Convention provided that all the facts and circumstances attending the transaction, with the *intent* of the parties, were proper subject matters for consideration, and that the rule of *ex æquo et bono* should apply.

In this case the consideration of this note was, as to the principal, the same as was the first note, and we can see very little reason why he should not comply with his contract as he made it. True he has only promised to pay in Confederate money, but the *consideration* was lawful money of the United States or property so valued. But the security got nothing. He is only bound on his contract, and it ought not, in equity, to be extended beyond what he intended. As the contract cannot be performed now, as the parties intended, and they are, by the law, thrown back on what is fair and right under the contract, we are inclined to think that

the principal and surety stand, upon principles of equity, on a different footing. The one has gotten property of the plaintiff, for which he ought fairly to account; the other has promised to see to it that the principal pay such an amount as he ought to pay, had the consideration *then* passed; and under our law, section 3504, a jury, even at law, may mould their verdict so as to "do full justice to the parties." · Should the jury in this case, under the law as we have suggested it, find a verdict for a certain sum against the principal debtor, and justice and equity would not, in their judgment, bind the security to stand to that sum, they may, in their verdict, provide for what sum he is liable.

Judgment reversed.