THE UNION NATIONAL BANK *et al.*

*v.*

ALFRED POST, for use, etc.

*Opinion filed October 24, 1901.*

1. BAILMENTS—*liability of pledgee who accepts payment of a pledged note.* One holding a note as collateral security who accepts payment thereof is liable to the pledgor for the face value of the note less the original indebtedness, whether the pledged note was legally collectible or not; and in the absence of any authority from the pledgor to accept anything but the full value of the note in money in payment, such liability exists whether the payment accepted by the pledgee was in money or in another note.

2. EVIDENCE—*method of book-keeping is not conclusive as to who is liable on indebtedness.* The manner in which a corporation keeps its books is not conclusive evidence as to whether the debt for which the individual note of its president was given was the obligation of the corporation or of its president.

*Union Nat. Bank* v. *Post*, 93 Ill. App. 339, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding.

This is a writ of error to the Appellate Court to reverse a judgment of that court affirming a judgment of the superior court, recovered by defendant in error against plaintiffs in error. The following, taken, in part, from the statement of the Appellate Court in its last opinion, with the references to the several decisions rendered in course of the litigation, will be sufficient for a full understanding of the case as it is finally presented to this court:

"The facts out of which the cause of action of appellee (defendant in error here) arises have been reviewed, in one phase or another, three times by this court and once by the Supreme Court, and the various decisions rendered upon such reviews may be found in *Kelley* v. *Post*, 37 Ill. App. 396, *Union Nat. Bank* v. *Post*, 55 id. 369, (and upon petition for rehearing 373,) *Post* v. *Union Nat.*

192—25

*Bank,* 159 Ill. 421, and *Union Nat. Bank* v. *Post,* 64 Ill. App. 404. These facts, presenting a very complete history of the litigation, may be gathered by a reference to the Reports. To again recite the facts in detail in this opinion would unnecessarily lengthen it and would serve no good purpose, therefore we state only such facts as the jury were warranted in finding from the evidence as the basis of their verdict sustaining appellee's right to a recovery.

"There was enough in the evidence to justify the jury in finding that appellant, the bank, received from appellee, Post, a promissory note for $25,000, made by James J. West, by his attorney in fact, payable to the order of James E. Munroe, and by him endorsed without recourse, which note was the property of Post, and was given by Post to appellant, the bank, to be held as collateral security to a note for $16,000, which evidenced a debt of Post to appellant, the bank; that the Union National Bank transferred the note to appellant Kelley; that afterward, and without the assent of Post, Odell, the president of the bank, acting, as he says, as agent of Kelley, exchanged the West-Munroe note for a note for the principal sum of $25,750, made by the Chicago Times Company, by West, its president, the amount of this note being for the principal and accrued interest on the West-Munroe note, which was surrendered in exchange; that this exchange was made by West and Odell as a payment of the West-Munroe note; that afterwards, and without the assent of Post, Odell again exchanged the Times company note for another note made by James J. West, for $25,000, and still again Odell exchanged this latter note, without the assent of Post, for the original West-Munroe note; that the proceeds of the original loan made upon the West-Munroe note were received by the Chicago Times Company, and that the Times company note for $25,750 was executed by West, its president, with authority, and was a valid and enforceable promissory note as against the Times company; that the Times company, at

the time of the maturity of the note, was solvent, and the note was collectible and worth its face value; that the West note and the West-Munroe note, taken by Odell in exchange for the Times company's note, were then wholly worthless by reason of the insolvency of West. Francis A. Riddle is beneficially interested by reason of the fact that, having been a surety upon the Post note for $16,000 and having advanced moneys for Post, he was made assignee of an interest of Post in the collateral note. This suit was brought by Post, for the use of Riddle, to recover from appellants the value of the collateral note deposited by Post with the bank, and paid by West to Odell by the giving of the Times company's note, less the amount due upon the $16,000 note."

The action was originally in trover, but was changed to case, and before the last trial two additional counts were added to the declaration. The first of these additional counts charged that the defendants took and accepted the Times-West note in payment of the West-Munroe note belonging to plaintiff and which the defendants held only as collateral security, and that they thereby became liable to pay the full amount of it, less the debt for which it was pledged. The second count alleged that the defendants took in exchange for the West-Munroe note the Times-West note, and then held said latter note in place of the former as collateral for plaintiff's indebtedness, and thereafter wrongfully surrendered said Times note without collecting the same.

On the trial the court, at the request of plaintiff, gave to the jury, among others, the following instructions:

6. "The jury are instructed that if they believe, from the evidence, that $25,000 was borrowed and the individual note of James J. West was given therefor, and further believe that a credit was given to said West on the Chicago Times Company's books for said amount, yet if the jury believe, from the evidence, that the said money was borrowed for the said Chicago Times Com-

pany and was used in its business by its officers having the power and right to control and manage its business affairs, and that by the direction of its said officers it received the full benefit and use of the identical money borrowed, then the indebtedness was in fact the indebtedness of the Chicago Times Company and it was lawful for the said Chicago Times Company to execute its note therefor, and, when executed and delivered, the same would constitute a valid, legal obligation of said company, and it was lawful for said company, by and with the consent of the holder of the said individual note of the said West, to deliver its said note to take up, retire, satisfy and pay the said individual note of the said West, given to evidence the indebtedness for said money, and if said company knowingly and in good faith did so deliver its said note to the holder of said individual note of the said West, the failure of the said company to charge the account, on its books, of the said West with the amount of said note would not, of itself, invalidate said company's note or render it accommodation paper.

9. "And if the jury believe, from the evidence, that said Chicago Times note was a valid obligation of the said Chicago Times Company, and collectible, and was held by said Union National Bank or said Kelley as collateral, then it was the duty of the said bank, or of the said Kelley, if the jury believe the said $16,000 note had been sold by the said bank to the said Kelley, to hold the said note of the Chicago Times Company until the maturity of the principal note of $16,000, and then apply the proceeds thereof to the payment of the said $16,000 note and pay the residue to the plaintiff; and in such case, although the jury may believe, from the evidence, that the said Chicago Times note was of greater value than the note originally deposited as collateral, yet such increase in value, if any, inured to the benefit of said Post and his assigns, and said Union National Bank, or said Kelley, were bound to treat the same as if it had

been originally deposited by said Post as collateral to said principal note of $16,000; and if the jury believe, from the evidence, that said Union National Bank, or the said Kelley, (if the said principal note had been sold to him,) did not exercise ordinary and reasonable care and diligence in retaining and attempting to collect said Chicago Times note, and in delivering the same up to the said West and receiving the note of the said West in lieu thereof, (if they did so deliver up the same,) and that loss occurred to the plaintiff by reason thereof, then the defendants, or such one or more of them who participated in such exchange, would be liable to the plaintiff for such loss, and the same may be recovered in this suit. The amount of care and diligence which constitutes ordinary care and diligence, as above set forth, is that care and diligence which an ordinarily prudent man usually exercises in his own affairs."

And the court refused to give the following instructions asked by defendants below:

2. "You are instructed that, under the evidence in this case, Mr. West had, as president of the Chicago Times Company, no legal power to sign the name of the Times company to the note for $25,750, dated March 16, 1889, and that such note was an accommodation note as to the Times company, and as such was neither a legal obligation of nor enforceable against the Chicago Times Company, but that, notwithstanding this, Mr. West would be liable for the payment thereof.

3. "If you find, from the evidence, that the $25,000 in money for which the original West-Munroe note was given, although used in paying debts of the Chicago Times Company, was credited to West on the books of the Chicago Times Company, and so remained as a credit to Mr. West on said books until ultimately paid to him, then you are instructed that the West-Munroe note was a personal obligation of James J. West and not a debt of the Times company; and if you further find, from the

evidence, that when the Times-West note was given in exchange for the West-Munroe note, the amount thereof was not charged to Mr. West in his individual account on the books of the Times company, and was never thereafter so charged or. treated as a Times company obligation, you are instructed that Mr. West, as president of the Times company, was without authority to sign the name of the Times company to the Times-West note, and that such note, as to the Chicago Times Company, was merely accommodation paper."

The judgment affirmed was for $13,945.

HENRY S. ROBBINS, for plaintiffs in error.

SIMEON P. SHOPE, and THOMAS CRATTY, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

The only questions presented for our consideration arise out of the rulings of the superior court in refusing to give to the jury the second and third instructions offered by the defendants below, and in giving to the jury the sixth and ninth as requested by plaintiff below. These instructions are set out in the statement preceding this opinion. One issue involved the question whether there was a payment of the West-Munroe note for $25,000 by the making, delivery and acceptance of the Times-West note for $25,750; another, whether in surrendering said Times-West note for still another note the plaintiffs in error became liable for its value to defendant in error. And the point made is, that in determining whether what was done amounted to a payment or not, or whether or not the plaintiff, as owner of either the West-Munroe note or the Times-West note, had been damaged by the unauthorized acts of the defendants, the pledgees, it was important that the jury should be correctly instructed as to the lawful authority of West, who was the president of the Times company, to make and deliver said Times-

West note in payment of said West-Munroe note, or in exchange for the same. Said Times-West note purported to be executed by the Times company and was payable to James J. West. It was for the amount of the principal and interest of the West-Munroe note and was endorsed in blank by said West, hence West, who was liable to pay the West-Munroe note, was also liable to pay the Times-West note. But the evidence tended to prove that West was insolvent, and that the said notes, so far as his liability thereon was concerned, were worthless, while the note of the Times company—if it was the note of said company given for value and not as mere accommodation paper—was good and worth its face. The law would be, however, that if said West-Munroe note was paid to the plaintiffs in error as pledgees they would be liable to account for its face to the defendant in error, the owner, whether the note was valueless or not. Having received payment, the question of its prior value became immaterial. Nor would it be material on the question of their liability whether they accepted such payment in money or in another note,—if there was, in fact, a payment,— they having no authority from the pledgor to receive anything in payment except its full face value in money.

There were, then, two important questions of fact before the jury: First, was the making, delivery and acceptance of the Times-West note a payment of said West-Munroe note; and second, if not, was it an exchange of one for the other, as alleged in the second of the additional counts, the second note becoming the property of the pledgor. If it was the latter, then the defendant in error had the right to treat such exchange as made for his benefit, and to hold the plaintiffs in error to the same accountability for said Times-West note so taken in exchange as for the one for which it was exchanged.

The contention of plaintiffs in error is that West had no authority to execute the Times-West note, for and in the name of the Times company, payable to himself; that

his authority, as president, to execute commercial paper for the company did not authorize him to make and issue the note of the company to himself and with which to pay and take up his own obligation,—citing *Dobson* v. *More*, 164 Ill. 110, *Park Hotel Co.* v. *Fourth Nat. Bank*, 86 Fed. Rep. 742, and other cases. This proposition of law and fact is urged in support of the one that the Times-West note was of no value as a note against the company because legally unenforceable against it, but was only enforceable against West, the endorser, and that therefore the jury could not find that by its surrender the defendant in error had lost its value as a note against the Times company. The legal proposition involved need not be controverted; but the jury found the facts the other way,—that is, that West did have authority to make and deliver the note, and that it was made to take up the West-Munroe note because the money for which the latter note was given was borrowed for and was used by the Times company. Nor can it be said that this finding was without evidence to support it. There was such evidence, and as a question of fact it was not controverted by evidence. With these facts established or before the jury it would have been error to give said second refused instruction on behalf of plaintiffs in error.

Nor do we think that the legal results declared by the third refused instruction would necessarily follow from the fact recited in that instruction. The manner in which the books of the Times company were kept would not conclusively determine that the original indebtedness was not in reality that of the Times company instead of that of West. They were facts proper to be considered, but in no view were they conclusive.

We cannot see that the said sixth and ninth instructions given at the request of the plaintiff below are open to the objection urged, that they told the jury that the debt for which the West-Munroe note was given was in reality the debt of the Times company. The instructions

did not conclude the jury on that question, but left it to be determined from the evidence.

The record does not sustain counsel in his assignment of errors, and no error appearing, the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*