ERLANDSON, RESPONDENT, *v.* ERSKINE, RECEIVER, ET AL., DEFENDANTS; EDMINSTER, APPELLANT, *v.* WAR FI-NANCE CORPORATION, RESPONDENT.

(No. 5,909.)

(Submitted June 14, 1926.  Decided June 29, 1926.)

[248 Pac. 209.]

*Promissory Notes—Assignment—Failure of Assignee to Notify Maker—Payment by Maker to Payee—Effect—Giving New Note for Old One Constitutes Payment of Old Note, When.*

Promissory Notes—Payment—Evidence—When Conclusion of Witness.
  1.  In an action on a promissory note the testimony of the maker that he had paid it by the giving of a new note was but the statement of a conclusion, alone insufficient to support a judgment in his favor; the question whether payment resulted was determinable from the facts related by him, not from his conclusion.

Same—Giving of New Note—When Payment of Old One.
  2.  Whether a new note shall constitute payment of the original one depends upon the intention of the parties at the time the new one was given.

Same.
  3.  Where a new note was given to a bank by a mortgagor under the representation that it would secure for him a better rate of interest and on demand for the return of the original one was advised that it was then temporarily out of the payee's possession but would be canceled upon its return, the transaction constituted payment of the original note and a complete defense to an action on it by the bank.

Same—Receiver of Assignee—Agency.
  4.  An agent of the receiver of the assignee of a promissory note stands in the same position as the receiver, his principal; and a receiver occupies the same position as his insolvent principal prior to the former's appointment.

Same—When Non-negotiable.
  5.  A promissory note containing an accelerated maturity clause is non-negotiable.

---

  2.  See 3 R. C. L. 1217.
  5.  See 3 R. C. L. 908.

Same — Assignment by Payee — When Maker not Chargeable With Notice.
6. Where at the time a new note was given in payment of a former one, the payee bank in effect assured the maker that while the *original note was then not in its possession, it was still owned and controlled by it, the maker, though negligent, will not be held chargeable with notice of the assignment of the original note.*

Same—Failure of Assignee to Notify Maker of Assignment—Payment by Maker Complete Defense.
7. *Where the assignee of a non-negotiable note fails to notify the maker of the assignment, and thereafter the maker makes payment to the payee (assignor) without knowledge of the assignment, the payment constitutes a complete defense to a suit by the assignee against the maker.*

[1]    Evidence, 22 C. J., sec. 588, p. 485, n. 82.
[2]    Bills and Notes, 8 C. J., sec. 793, p. 569, n. 54; p. 571, n. 55, 56, 57.
[3]    Bills and Notes, 8 C. J., sec. 793, p. 571, n. 56.
[4]    Receivers, 34 Cyc., p. 185, n. 49 New; p. 288, n. 31.
[5]    Bills and Notes, 8 C. J., sec. 237, p. 138, n. 77 New.
[6]    Bills and Notes, 8 C. J., sec. 835, p. 600, n. 88.
[7]    Bills and Notes, 8 C. J., sec. 352, p. 217, n. 58, 62; sec. 575, p. 388, n. 68; p. 389, n. 70; sec. 656, p. 443, n. 4 New; sec. 835, p. 600, n. 91. Evidence, 22 C. J., sec. 85, p. 148, n. 67.

*Appeal from District Court, Hill County; Charles A. Rose, Judge.*

ACTION in the nature of an interpleader by Oscar Erlandson against C. W. Erskine, as receiver of the First State Bank of Kremlin, B. H. Edminster, and the War Finance Corporation. From a judgment against B. H. Edminster in favor of the War Finance Corporation, B. H. Edminster appeals. Affirmed.

*Mr. Victor Griggs,* for Appellant, submitted a brief, and argued the cause orally.

What is notice? Legally, notice is knowledge of a fact which would provoke a reasonably prudent man to such inquiries, which if pursued with reasonable diligence, would lead to full knowledge. (20 Ruling Case Law, 346; *Hingtgen* v. *Thackery,* 23 S. D. 329, 121 N. W. 839; *Daly* v. *Rizzutto,* 59 Wash. 62, 29 L. R. A. (n. s.) 467, 109 Pac. 276; *Pierce* v. *Southern Pacific*

---

7.  See 2 R. C. L. 624.

*Company,* 120 Cal. 156, 40 L. R. A. 350, 47 Pac. 874, 52 Pac.; 302; *Staacke* v. *Routledge,* 111 Tex. 489, 241 S. W. 994; *McGee* v. *Hardacre,* 27 Ga. App. 106, 107 S. E. 563; *Bottini* v. *Mongolo,* 45 Nev. 245, 197 Pac. 702.) When the bank requested Erlandson to sign the second note, they informed him that the first note was back east, was temporarily out of the state, and that they would cancel the mortgage when it was returned. This was a notice of such facts as would put any reasonably prudent man upon inquiry and such inquiry, if pursued with reasonable diligence would lead to the knowledge that the note had actually been sold to the John F. Sinclair Company. Consequently, Erlandson had legal notice that the note was in the hands of a third party and if he paid the old by giving a new note to the First State Bank of Kremlin, he did so at his peril.

Aside from the question of notice, the giving of the second note was not in payment of the first note. While Erlandson claims that he paid the first note by giving the new note, this is only his conclusion and, as a matter of fact, the cashier of the bank had no authority to accept a new note in payment of the old note in the absence of a special agreement giving such authority, and no such notice was given. The giving of the $1,200 note was not in payment of the $1,150 note. (*First State Bank of Hilger* v. *Lange,* 55 Mont. 146, 174 Pac. 597; *Emerson Brantingham Impl. Co.* v. *Rangstad,* 55 Mont. 146, 195 Pac. 597; *White* v. *Hulls,* 59 Mont., at page 103, 195 Pac. 850; *United States Nat. Bank of Red Lodge* v. *Shupak,* 54 Mont. 542, 172 Pac. 324; *First National Bank* v. *Cottonwood Land Co.,* 51 Mont. 544, 154 Pac. 582.)

Consequently, the John F. Sinclair Company, having come into the possession of the $1,150 note, in good faith and for cash, paying therefor the full face value of the note, Erlandson has no defense whatever, to it as against the First State Bank of Kremlin, the John F. Sinclair Company or its agent, the appellant, B. H. Edminster.

*Messrs. Stewart & Brown,* for Respondent War Finance Corporation, submitted a brief; *Mr. John G. Brown* argued the cause orally.

The note in question being clearly a non-negotiable one and the testimony of the plaintiff being uncontradicted that it is paid, and the present holder being before the court, this plaintiff is entitled to a judgment as against defendant Edminster of cancellation of the note now held by Edminster. While it is true that he who makes and delivers negotiable instruments, when he fails to obtain surrender and cancellation of a prior negotiable note later renewed with a negotiable instrument, may have to pay the debt twice—this is not true of a non-negotiable instrument. (3 R. C. L. 1026; 8 C. J. 600, note 91; *Cornish* v. *Woolverton,* 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4; *Seibold* v. *Ruble,* 41 Okl. 267, 137 Pac. 696; *Sykes* v. *Citizens' Nat. Bank,* 69 Kan. 134, 76 Pac. 393; *Turner* v. *Territory,* 15 Okl. 557, 82 Pac. 650; *San Jose Ranch Co.* v. *San Jose Water Co.,* 132 Cal. 582, 64 Pac. 1097; *Joseph* v. *Catron,* 13 N. M. 202, 1 L. R. A. (n. s.) 1120, 81 Pac. 439.)

Did Erlandson pay one of the notes and does he still owe the other one? It is not a question of whether or not the holder of the note received his money. The question is, was it paid?

A receiver steps into the shoes of the defunct corporation taking no better title than his predecessor corporation had and is subject to the same defenses as might have been urged against the corporation for which he is receiver. (*Williams* v. *Johnson,* 50 Mont. 7; *Aetna A. & L. Co.* v. *Miller,* 54 Mont. 377.)

Remembering this is an action wherein the maker of these notes is the plaintiff and that he is entitled to have his record cleared and also remembering that as against Edminster he has a perfect defense there would seem to be little left in the case. However, some claim has been made that the War Finance note is also non-negotiable. This may be true, but the maker admits it as unpaid and that he still owes it. Who else can claim payment on it—certainly not Edminster. He must rest his claim or right to recover upon his own law and evi-

dence. (*White* v. *Turner*, 217 Pa. 25, 66 Atl. 89; 33 C. J. 464.)

As between these two defendants herein certainly the War Finance Corporation is clearly entitled to recover on the plain equities of the matter.

Erlandson has admitted in his testimony and it is uncontradicted proof in this case that his second note is not paid; also that it is held by the War Finance Corporation. That the War Finance Corporation obtained it for value upon assurances given by not only the First State Bank of Kremlin, but by John F. Sinclair, who was president of the John F. Sinclair Company, whose receiver is here contesting. Erlandson is certainly entitled to have his debt canceled and these mortgages cleared up because he has paid his money into court for the debt that he owes and the parties in question are before the court. Surely under these circumstances the equities were with the War Finance Corporation and they are entitled to a judgment herein. Not only are the equities in favor of the War Finance Corporation, but the law of negotiable instrument as well, in that John F. Sinclair Company's note being non-negotiable and having been paid the defense of payment is good as against it, while the War Finance Corporation's note may be non-negotiable the defense of payment is not true and furthermore is not available to the receiver of the John F. Sinclair Company.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an appeal by B. H. Edminster from a judgment against him in favor of the War Finance Corporation.

Conflicting claims for the payment of two certain promissory notes, each secured by mortgage upon his real and personal property, having been made against one Oscar Erlandson by the holders thereof, Erlandson, in November, 1924, deposited in the district court in and for Hill county a sum sufficient to satisfy either the one or the other of said notes and filed in said court a complaint in the nature of an interpleader, in which he named C. W. Erskine, as receiver of the First State

Bank of Kremlin, B. H. Edminster, and the War Finance Corporation the holders of said notes, respectively, as defendants.

In his complaint Erlandson set forth the facts and circumstances surrounding the giving of said notes, which will sufficiently appear hereinafter, and prayed that the defendants be required to appear and assert their respective claims; that the court determine which of said notes constituted his indebtedness and award the amount deposited to the holder of such note; and that thereupon all mortgages against his property be ordered satisfied of record.

Erskine, receiver, defaulted. Edminster and the War Finance Corporation filed answers and cross-complaints without questioning the regularity of the proceeding; issue was joined, and a hearing had before the court without a jury. On the evidence submitted the court found (1) that Erlandson had but one obligation, which was evidenced by a note for $1,200, due November 1, 1922; this note was held by the War Finance Corporation; (2) that the amount deposited fully satisfied and discharged the plaintiff's indebtedness and entitled him to the cancellation of all mortgages against his property given in connection with the notes in controversy; (3) that the note for $1,150, held by defendant Edminster had been fully paid, satisfied and discharged and (4) that Erskine, receiver, had no interest in the subject matter of the controversy. Judgment was entered in accordance with such findings, and Edminster appealed therefrom, making the War Finance Corporation and Erlandson respondents.

Error is specified upon the court's findings numbered 1 and 3, and upon the entry of judgment, on the ground that neither of said findings, nor the judgment, is supported by the evidence and that each of said findings and the said judgment is contrary to law.

There is no conflict in the evidence. The history of the transaction leading up to the commencement of the action is as follows: On November 20, 1920, Erlandson made, executed and delivered to the First State Bank of Kremlin his note for $1,150, payable November 20, 1921, and secured by mortgages

on his real and personal property.  The mortgages were duly made a matter of record, and within thirty days thereafter the bank assigned the note to the John F. Sinclair Company of Minneapolis for the full amount thereof.  On October 28, 1921, before the maturity of said note and at the request of the Kremlin bank, on the representation that it would secure for him a better rate of interest by borrowing from the War Finance Corporation, Erlandson gave to the bank a second note for $1,200, and as security therefor executed and delivered to the bank mortgages on the property described in the original mortgages.  These mortgages were also made a matter of record.  The original mortgages were not satisfied of record.

On delivery of the second note and mortgages, Erlandson demanded the return to him of the original note, but was told that the note was temporarily out of the state and would be delivered to him on its return.  He testified that he had confidence in the maker of the promise and would not have delivered the second note except for such a promise.  On a second demand he was told that both notes had been delivered to the War Finance Corporation and would be surrendered when he paid his indebtedness.  Shortly thereafter the bank, acting through its president and cashier, secured a loan of $25,000 from the War Finance Corporation, and, with other collateral, pledged the $1,200 note and mortgages to that institution.  In the application for the loan these men represented that the Erlandson mortgages securing the $1,200 note were the only liens against the property therein described, and attached thereto a financial statement made by Erlandson at the request of the bank at the time this note was given, and the opinion and certificate of the attorneys for the bank, all to the same effect.

Thereafter the Kremlin bank became insolvent, and C. W. Erskine was duly appointed its receiver.  The Sinclair Company failed and a Minnesota receiver was appointed for it, who, in turn, appointed Edminster his agent in Montana.  Edminster, as such agent made demand upon Erlandson for the payment of the $1,150 note, and the War Finance Corporation made like demand on its note.  Each of these notes contained

a clause authorizing the holder, on the happening of certain contingencies, to declare the note "immediately due and payable."

1. Counsel for the War Finance Corporation contend that, [1] by the uncontradicted testimony of the plaintiff, it was shown that the original note was paid, and that he still owed the new note, and that on this testimony alone the judgment should be affirmed.

While the plaintiff stated that he "paid" the first note, his testimony was that he did so by giving the new note. This was but a legal conclusion on the part of the witness. Whether or not the facts related by him established "payment" of the note was a question of fact to be determined by the court from the evidence. (*Tyler* v. *Hyde,* 80 Ill. App. 123; *Bank* v. *Marshall,* 9 Pa. Super. Ct. 621; *Letcher* v. *Com. Bank,* 1 Dana (Ky.), 82; *In re Utica Nat. Brewing Co.,* 154 N. Y. 268, 48 N. E. 521.) Plaintiff's conclusion alone cannot support the judgment.

2. Disregarding, for the moment, the assignment of the note, [2] does the testimony of the plaintiff justify the finding that it was paid?

While the giving of a new note is not considered "payment" of the original note in the absence of an understanding or agreement to that effect (*First State Bank of Hilger* v. *Lang,* 55 Mont. 146, 9 A. L. R. 1139, 174 Pac. 597; *White* v. *Hulls,* 59 Mont. 98, 195 Pac. 850), a new note may constitute payment if it was so understood or agreed between the parties at the time the new note was given (8 C. J. 569, and cases there cited); in other words, the intention of the parties controls.

Here the new note was given for the purpose of securing a [3] better rate of interest and, incidentally, assisting the payee named in the original in securing a loan, and under an express agreement that the original would be canceled and returned. The intention of the parties, under these circumstances, was manifestly to substitute the new note and mortgages for the originals. The transaction, as between them, constituted "payment" of the original note, and the showing made would have

constituted a complete defense to an action by the bank on the original note and mortgages.

3. In what position, then, does the defendant Edminster [4] stand? It is conceded that he was acting merely as agent for the receiver of the assignee. As such agent he stands in the same position as the receiver, his principal (sec. 7973, Rev. Codes 1921); while the receiver occupies a position in no respect differing from that of his insolvent principal prior to the appointment (*Williams* v. *Johnson,* 50 Mont. 7, Ann. Cas. 1916D, 595, 144 Pac. 768; *Aetna A. & L. Co.* v. *Miller,* 54 Mont. 377, L. R. A. 1918C, 954, 170 Pac. 760.)

The note assigned contained an "accelerated maturity clause," [5] which rendered it non-negotiable. (*Great Falls Nat. Bank* v. *Young,* 67 Mont. 328, 215 Pac. 651.)

Counsel for Edminster asserts that the fact that the bank [6] did not have the note in its possession was sufficient to put a reasonably prudent man on his inquiry and should be held to constitute notice of the assignment; but the statements made by the bank cashier were in the nature of an assurance that the note was still owned and under the control of the bank, and tended to allay rather than awake a suspicion that the bank had assigned it. While the plaintiff was negligent, it cannot be said that he had notice or was chargeable with notice of the assignment.

Edminster, then, stood in the position of the assignee of a [7] non-negotiable note, which he acquired prior to maturity, without notice, in good faith, and for a valuable consideration, but of which facts he had given to the maker of the note no notice, nor had such notice been imparted to the maker in any manner. Had this note been negotiable, the plaintiff might have been compelled to pay it, as well as the new note given. He sought to evade this double liability by setting up the defense of payment, which would, as we have seen, have been a complete defense to the note in the hands of the payee.

4. Is such a defense available here? "The peculiar protection afforded by the rule of the law merchant to holders in due course is restricted to holders of instruments that are negotiable.

It does not extend to a transferee of a non-negotiable instrument, however much he may have acted in good faith and without notice of any infirmity in the instrument or defects in the title; * * * the assignee stands in the same position as did his assignor; if the latter could not have recovered, the assignee is not entitled to recover; accordingly the party whose signature appears upon the instrument may defend an action by an assignee by proof of any matter that would have been a defense against the original payee, as, for example * * * payment has been made to the payee without notice of the transfer of the instrument." (3 R. C. L. 1026; 8 C. J. 600, note 91.)

The rule is just and equitable. The assignee is presumed to know the law, and, if he would protect his interests, he should notify the maker of the note that he is the assignee thereof; if he neglects to do so and, through his negligence, either he or the maker must suffer through the act of the payee in collecting the amount due on the note, he should be the one to suffer. (Sec. 8772, Rev. Codes 1921.)

The above rule has been applied, with certain modifications, in *Cornish* v. *Woolverton,* 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4, in which it is said that the rule is that "the assignee of a non-negotiable contract made for the 'payment' of money * * * takes all the rights of the assignor, subject only to the equities and defenses existing in favor of the maker at the time of the assignment, and that matters arising out of the subsequent dealings between the maker and assignor, not relating to the contract, but which would be defenses in an action" between the maker and the "assignor, are not available as against the assignee, * * * but that in order to cut off defenses arising out of dealings with relation to the contract itself between the maker and the assignor after assignment—such as payment, release, *etc.*—notice of the assignment is necessary; so that under section 571, *supra* [now sec. 9068, Rev. Codes 1921], if the maker, without notice of the assignment, in good faith pays the assignor the amount of the debt or obligation, and takes an acquittance, this constitutes a com-

plete defense to a suit by the assignee." We are not here concerned with the modification of the rule which cuts off defenses arising out of dealings not relating to the contract, but if the maker, on paying the obligation to the assignor, is required to take a receipt or "acquittance," the defense is not here available, as it is conceded that neither receipt nor satisfaction of the original mortgages was given to the maker. However, we are of the opinion that the phrase "and takes an acquittance" was added to the final statement only to show the steps taken by the maker under the facts in that case, and does not qualify that rule heretofore laid down that "In order to cut off defenses  *  *  *  —such as payment, release, *etc.*— notice of the assignment is necessary."

The "payment" is the all-important matter, and, while the maker may be negligent in failing to secure the cancellation of the note paid or a written satisfaction of the mortgages securing that note, which latter was the "acquittance" mentioned in the *Cornish Case,* such negligence did not affect the rights of the assignor of that note, as those rights had theretofore attached. In the rule as quoted above from Corpus Juris, and in the authorities generally, we find no requirement that the maker take an acquittance on making payment in order to render such payment a complete defense to suit by the assignee.

Where a renewal note is given, if it is shown that it was the intention of the parties to extinguish the one by the other, the renewal note is treated as a new transaction on a new promise (*Walker* v. *Dunham,* 135 Mo. App. 296, 115 S. W. 1086), and when the maker, in good faith and without notice of the assignment, either pays to the payee of a non-negotiable note the full amount due thereon, or gives a new note in lieu thereof under such circumstances as clearly show that the new note was given and accepted in extinquishment of the old, proof of such facts constitutes a complete defense to a suit by the assignee of the payee. (*Seibold* v. *Ruble,* 41 Okl. 267, 137 Pac. 696; *Dickerson* v. *Higgins,* 15 Okl. 588, 82 Pac. 649; *Sykes* v. *Citizens' Nat. Bank,* 69 Kan. 134, 76 Pac. 393; *San Jose Ranch Co.* v. *San Jose Water Co.,* 132 Cal. 582, 64 Pac. 1097;

*Murray* v. *Reed,* 17 Wash. 1, 48 Pac. 343; *Squires* v. *Adams,* 70 Ill. App. 502; *Union National Bank* v. *Post,* 93 Ill. App. 399; *Id.,* 192 Ill. 385, 61 N. E. 507; *Horne* v. *Young,* 40 Ga. 193; *Ellis* v. *Ballou,* 129 Mich. 303, 88 N. W. 298.)

As between the plaintiff and Edminster, as agent for the assignee, the facts shown constituted a complete defense to the cross-complaint on the $1,150 note and justified the court's finding numbered 3 that said note was paid, satisfied and discharged.

5. It follows that, as the $1,200 note was given for a valuable consideration and was not paid, the plaintiff had no defense to that note. It was, as the court found, his only obligation; he was either owing the amount due thereon to be the Kremlin bank or to its assignee, the War Finance Corporation. The War Finance Corporation became the assignee of that note before maturity, in good faith and for a valuable consideration, and, as the plaintiff had no defense to that note in the hands of the payee, he had none to assert as against the assignee. While the note was also non-negotiable and the War Finance Corporation was negligent in not searching the records of Hill county, it is immaterial whether those records gave constructive notice to it or not; the receiver of the Kremlin bank defaulted and could not be heard to complain, and Edminster was without standing in court.

From the foregoing it is manifest that the findings of the court and the judgment based thereon are warranted and supported by the evidence and are in conformity with the law. The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.