The execution of the note set out in the complaint by defendant, James Howard, and the endorsement by defendant, Percy W. Wells, are admitted. Defendants, in their answer to the complaint, allege that the execution of the original note for which the note sued on is a renewal, was procured by false and fraudulent representations, and that same was therefore without consideration, null and void. Plaintiff replies by alleging that it was a holder of the note in due course, having purchased the same for value, before maturity, and without notice of any infirmity in the instrument, or defect in the title of the person from whom it purchased the note.
The note set out in the complaint and offered in evidence by plaintiff, is dated 23 December, 1922, is for $5,000, and is due 60 days after date. It is signed by James Howard and is payable to his order, at the Commercial National Bank, Wilmington, N.C. It is endorsed by both defendants and has not been paid.
On 27 May, 1922, James Howard executed his note for $5,000, due 90 days after date. This note was endorsed by Percy W. Wells, and was payable either to the order of the maker or to the Commercial *Page 545 
National Bank. The consideration for this note was 50 shares of the capital stock of the Commercial National Bank of Wilmington, N.C. sold to Howard by Thomas E. Cooper, a director of said bank and subsequently its president. James Howard was induced to purchase the stock and to give his note for the purchase price by representations made to him by Thomas E. Cooper.
On 31 May, 1922, this original note was purchased by plaintiff. It was presented to the discount committee of plaintiff by Thomas E. Cooper, at that time a member of the committee and also vice-president of the bank. The note was discounted for the Commercial National Bank. Plaintiff paid face value for the note, less discount at 6 per cent. This original note was not paid at maturity, and a note executed by Howard and endorsed by Wells was taken by plaintiff in renewal. There were several renewals, the last being the note upon which this action is brought.
The issues submitted to the jury were as follows:
1. Was the original note for which the note in controversy was given as a renewal procured by fraud and misrepresentation as alleged in the answer?
2. If so, did plaintiff, Merchants National Bank, at the time of the purchase of said note have notice of such alleged fraud?
3. Did plaintiff, Merchants National Bank, purchase such original note for value and before maturity?
4. If so, did defendants at time of execution of the renewal note sued on have notice of such alleged fraud?
5. What amount, if any, is plaintiff entitled to recover of the defendants?
At the conclusion of the evidence it was agreed that the court should charge the jury to answer the first and third issues "Yes," and that the answer to the fifth issue should be reserved and answered by the court. Only the second and fourth issues were therefore submitted to the jury. These were answered "Yes" and "No," respectively.
It is therefore established by the verdict that the original note was procured by false and fraudulent representations, and that the note in controversy was given in renewal of this note; that plaintiff had notice, at the time it purchased the original note, of the fraud, but that it paid value for the note and purchased it before maturity; that defendants had no notice, at the time of the execution of the renewal note sued on, that the representations by which the original note was procured were false and fraudulent.
Judgment was rendered that plaintiff recover nothing of defendants. To this judgment plaintiff excepted, and appealed therefrom to the Supreme Court. Assignments of error are set out in the opinion. *Page 546 
Assignments of error based upon exceptions appearing in the case on appeal relative to the first and third issues need not be considered, as plaintiff appellant consented, at the conclusion of all the evidence, that the court should instruct the jury to answer both these issues "Yes." The controversy between the parties was thus confined to matters involved in the second and fourth issues. Appellant relies upon its exceptions to evidence and instructions applicable to these issues for a reversal of the judgment and for a new trial.
Defendants contend that the note upon which plaintiff seeks to recover in this action was the last of a series given by defendants and taken by plaintiff in renewal of the original note. The jury has found, by consent, that this note was procured by false and fraudulent representations made by Thomas E. Cooper to the maker, James Howard, and to the endorser, Percy W. Wells. This original note was negotiable in form and was purchased by plaintiff before maturity and for value. If, at the time it purchased this note, plaintiff had no notice of the false and fraudulent representations, by means of which its execution by the maker was procured, it was a holder in due course of the note, and could have enforced payment for the full amount thereof against all parties liable thereon. C. S., 3033 and 3038.
The note upon which this action is brought is not the note procured by false and fraudulent representations. That note was dated 27 May, 1922, and was due ninety days after date. The note sued on was dated 23 December, 1922, and was due-sixty days after date. Both are for $5,000.
In apt time plaintiff tendered an issue, as follows: "Did defendants negotiate the note sued on direct with plaintiff?"
To the refusal of the court to submit this issue, plaintiff excepted.
In apt time plaintiff requested the court to instruct the jury as follows: "If you find from the evidence, by its greater weight, that the note sued on was given to secure the payment of the first note and to get an extension of time, then the court charges you that defendants would be liable."
To the refusal of the court to give this instruction plaintiff excepted.
By these exceptions plaintiff presents its contention that defenses available to defendants in an action upon the original note, dated 27 May, 1922, and purchased by plaintiff, cannot be set up and maintained in an action upon the note dated 23 December, 1922, which was executed by defendants and delivered to plaintiff. *Page 547 
These exceptions, however, cannot now be urged by plaintiff as grounds for a new trial. Plaintiff did not except to the first issue, which was predicated upon the proposition that the note in controversy was given as a renewal of the original note, which was procured by false and fraudulent representations. This issue was answered "Yes," by consent.
Plaintiff's evidence shows that the note sued on was a renewal of the original note. Col. James R. Young, vice-president of plaintiff bank, testified that the first note, for ninety days, was discounted for the Commercial Bank on 31 May, 1922; that there was a renewal in August for sixty days, and again a renewal in October for sixty days. "This present note was received 30 December, 1922. I conducted most of the correspondence. I know that, after the first time, we renewed it without any regard to the bank. The first note was agreed to be taken up in June, and after this we looked into the financial standing of the parties; and while we were trying to collect it we were forced from time to time to renew, because we could not make collection. Nothing has ever been paid on the note."
These exceptions cannot be sustained. There was no error in refusing to submit the issue tendered, or in refusing to give the instruction requested.
The issue tendered by plaintiff was inconsistent with the first issue submitted without objection by plaintiff. Plaintiff, by its consent that this issue should be answered "Yes," admitted that the note sued on was a renewal of the original note, which was procured by false and fraudulent representations. Indeed, all the evidence was to this effect. There is no evidence that the note sued on was taken in payment of the original note.
The note sued on, being a renewal of the original note, any defense available to defendants in an action on the original note is available in this action. The defense relied upon by defendants is, that plaintiff took the original note with notice that same was procured from defendants by false and fraudulent representations, and that note sued on is a renewal of the original note. This is a good and valid defense, not only as against the original note, but also as against any note given and accepted in renewal thereof.
"Where a note is given merely in renewal of another note, and not in payment, the renewal does not extinguish the original debt or in any way change the debt, except by postponing the time for payment; and as a general rule the holder is entitled to the same rights and remedies as if he was proceeding on the original note." 8 C. J., p. 443, sec. 656; Bank v.Hall, 174 N.C. 477; Grace v. Strickland, ante, 369. *Page 548 
"As between the original parties and as against transferees, who are not bona fide purchasers for value, a renewal note is open to all defenses which might have been made against the original note, at least in so far as they relate to consideration, such as want or failure of consideration, fraud, usury, gambling debts, or other illegality. This does not apply, however, where a note is taken in payment and not in renewal. It is a defense to renewal notes that the signatures of the makers were obtained by fraud of the payee, in an action by the payee." 8 C. J., sec. 658. A defense available as against a payee is available as against a purchaser or transferee who is not a holder in due course. C. S., 3039.
The note sued on in this action is a renewal of a note procured from defendants by false and fraudulent representations made to defendants by Thomas E. Cooper. This original note was purchased by plaintiff for value and before maturity. It became material, therefore, to determine whether or not plaintiff had notice, at the time it purchased the original note, of such false and fraudulent representations. This question is involved in the second issue. C. S., 3033 and 3038.
The contention of defendants is that the false and fraudulent representations, by means of which the note was procured, were made by Thomas E. Cooper, vice-president and member of the discount committee of plaintiff bank, and that said Cooper presented the note to the committee and acted as a member of the committee in making the purchase; that knowledge of Cooper is imputed to plaintiff bank.
Plaintiff's contention is that Thomas E. Cooper had a personal interest in the note of defendants, and in the sale of the stock for which note was given, and that therefore his knowledge of the fraud cannot be imputed to plaintiff.
These contentions were presented to the jury by the court in an instruction, as follows: "It is admitted in this case that at the time the original note was bought by the Merchants National Bank, Thomas E. Cooper was vice-president of the bank and a member of its discount committee, and took part in the purchase of the note. The court charges the jury, if they find from the evidence that the original note was obtained by fraudulent misrepresentations of T. E. Cooper, and that it was sold by T. E. Cooper to plaintiff, or that it was sold to the Commercial National Bank, and that bank sold or discounted said note to plaintiff, and that in the discounting or purchase of said note, said T. E. Cooper was a member of the discount committee and acted in the discounting of the note, then plaintiff bank had notice of the fraud, unless you find from the evidence that Thomas E. Cooper was personally interested in the sale of the stock to defendant Howard and handled the note Howard gave originally. In the latter case the court charges you that what Thomas E. Cooper knew would not be notice to plaintiff *Page 549 
bank. So that, if you find from the evidence that Thomas E. Cooper was personally interested in the sale of the stock to Howard and in the note Howard gave originally, then you will answer the second issue `No.' But if you do not find from the evidence that Thomas E. Cooper was personally interested in the sale of the stock to Howard, and in the note Howard gave originally, then you will further consider the case, and determine, independent of those considerations, whether plaintiff bank had actual knowledge of the fraud, or knowledge of such facts that its action in taking the instrument amounted to bad faith.
"On that question, if you find by the greater weight of the evidence that the plaintiff bank had no notice of the fraud, or no knowledge of such facts that its action in taking the instrument amounted to bad faith, then you should answer the second issue `No.' Unless you so find, answer it `Yes.'"
To this instruction plaintiff excepted. The exception is not sustained. The instruction is a clear and accurate statement of the law applicable to facts as admitted by the parties and as the jury might find them to be from the evidence. "Ordinarily, a bank is presumed to have notice of matters which are known to its president, upon the theory that he will in the line of his duty communicate to the bank such information as he has; but the law recognizes the frailty of human nature, and when the president has a personal interest to serve, or is acting in a transaction in his own behalf, the presumption does not obtain that he will communicate matters to the bank which are detrimental to him." Bank v. Wells, 187 N.C. 515.
There was conflicting evidence as to the relation of Thomas E. Cooper to the original note purchased by the plaintiff and as to his relations to the stock which he sold to defendants. It was within the province of the jury to find the facts from the evidence with respect to these matters, and his Honor properly so instructed the jury.
There was also evidence from which the jury might find that the discount committee of plaintiff bank knew the relations of Thomas E. Cooper to the Commercial National Bank and to the defendants; that he had formerly lived in Wilmington, the home of defendants; that he was then a director of said bank, and had formerly been one of its officers; that negotiations were then in progress for him to sever his relations with plaintiff and to return to Wilmington as president of the Commercial National Bank, and that the result of these negotiations was dependent upon the sale of the stock in said bank owned by W. B. Cooper, his brother.
Although the jury might find from the evidence that Thomas E. Cooper had a personal interest in the note which he presented for discount for the Commercial Bank, the jury might also find from the evidence *Page 550 
that the discount committee had notice of such interest. Thomas E. Cooper did not, as vice-president or as a member of the discount committee of plaintiff bank, purchase the note in which he had a personal interest. He presented the note to the full committee, and the committee purchased the note, as it had authority to do. Whatever knowledge or notice this committee had as to the personal interest of Thomas E. Cooper in the note, the plaintiff had. The court charged the jury that, independently as to whether they found that Thomas E. Cooper was personally interested in the note or in the sale of the stock to defendant Howard, they would further consider the case and determine whether or not the plaintiff had actual knowledge of the fraud, or knowledge of such facts that its action in taking the note amounted to bad faith. This was a correct instruction, and the exception to it cannot be sustained.
Upon the fourth issue the court instructed the jury as follows: "So that, gentlemen, with respect to the fourth issue, if you find from the evidence, and by the greater weight of it, that the defendants, at the time of the execution of the renewal note sued on, had knowledge of the said alleged fraud, you will answer the issue `Yes.' Unless you so find, answer it `No.'"
Plaintiff's exception to this instruction cannot be sustained. The law upon which this instruction is based is stated in 8 Corpus Juris, p. 444, as follows: "One who gives a note in renewal of another note, with knowledge at the time of a partial failure of the consideration for the original note, or of false representations by the payee, waives such defense and cannot set it up to defeat or to reduce the recovery on the renewal note."
It is admitted that plaintiff is a holder of the note, which is negotiable on its face. The title of the person who negotiated the note to plaintiff having been shown to be defective, the burden is on plaintiff to prove that it is a holder in due course. C. S., 3040. Upon the answers to the first, second, and third issues, plaintiff was not a holder in due course of the original note. The burden of proof is upon plaintiff to show that defendants had notice of the fraud at time of execution of renewal note; otherwise, the defense to the original note is available as a defense to the renewal note.
Plaintiff's contention as to the facts and the law involved in this action have been submitted to the jury in a trial free from error as to matters of law or legal inference. This Court has jurisdiction to review upon appeal the decisions of the Superior Court upon matters of law and legal inference. Constitution of N.C. Art. IV, sec. 8. We find
No error. *Page 551