HATTEN REALTY CO. v. BAYLIES ET UX.
(No. 1618; July 30, 1930; 290 Pac. 561)

70

For the appellants there was a brief by *Clyde M. Watts,* of Cheyenne, Wyoming, and *Rosenberger, McVey & Freet,* of Kansas City, Missouri, and oral argument by *Mr. Watts* and *Mr. McVey.*

72

For the respondent there was a brief by *M. A. Kline*, of Cheyenne, Wyoming, and oral argument by *Mr. Kline*.

74

*Rosenberger, McVey and Freet,* and *Clyde M. Watts* in reply.

BLUME, Chief Justice.

F. A. Baylies, one of the defendants in this suit and generally herein referred to as "defendant" owned land and personal property in Uinta County, in this state. He wanted to sell or trade it, and employed the Hatten Realty Company, the plaintiff herein, and generally designated herein as such, as his agent to further such purpose. Just the extent of the agency is not clear. Hatten, president of the realty company, testified that it was to find a purchaser for trade or exchange for defendant's property. Defendant himself testified that plaintiff was merely "to assist in making the sale or trade" of the property and "to represent him exclusively as his agent in the transaction and assist

him in the deal." Plaintiff found Vanden Boom of Kansas City, who wanted to trade property situated in that city for ranch property, and caused him and defendant to enter into negotiations, assisting therein in the usual manner of real estate agents. A man by the name of Cook acted for Vanden Boom, but the latter's associates are, for the purposes of this case, ordinarily ignored herein. After the defendant had inspected the property in Kansas City and he had returned to Wyoming, he concluded an exchange, gave plaintiff for its commission, as agent, five notes for $500 each, all dated May 15, 1926, due two, three, four, five and six months after date respectively, and went to Kansas City to take charge of the property for which he had traded. After he had been there for some time, he discovered that he had been defrauded by Vanden Boom. He repudiated the transaction on December 24, 1926, and on December 28, 1926 commenced an action in Uinta County, Wyoming, to set the exchange aside and to recover his damages. That suit was decided on November 18, 1927, which resulted in defendant's favor, and in which the exchange was "set aside, canceled, annulled and held for naught." An appeal from that judgment to this court resulted in an affirmance. Baylies v. Vanden Boom, 40 Wyo. 411, 278 Pac. 551. In that suit defendant claimed as one item of damages the sum of $2500 paid to the Hatten Realty Company. He testified that he had paid that sum and interest thereon to that company and he recovered judgment against Vanden Boom for that amount, which, however, was shown not to have been paid at the time of the trial in the instant case.

The notes above mentioned given to the Hatten Realty Company, plaintiff herein, fell due while the defendant was in Kansas City. Some correspondence took place between the parties hereto. On July 13, 1926, defendant wrote, among other things:

"I am sorry to have to report that I will not be able to pay that note coming due the 15th of this month at this

time. \* \* \* Regarding the property, will say that it is about as represented.''

In a letter of August 3, he said that physically the property in Kansas City was not much different from what he had expected to find, and

''I have been worrying about what is due you more than you can realize and appreciate your kindness in letting the matter run as you have. I am confident I will be able to pay later but it is impossible to command the money at this time.''

On December 26, 1926, the plaintiff, evidently then contemplating suit against Vanden Boom, wrote:

''Confidentially, as my agent, don't let Cook or anyone get any statements out of you as to what he represented as to this property, its occupancy and the income. \* \* \* When I see you I can explain. \* \* \* You better destroy this, so no one in your office will see it \* \* \*. I want to get that matter (evidently between the parties hereto) fixed as soon as we can and have it out of our way. You will hear from me again as soon as I can make a turn.''

On March 18, 1927, plaintiff wrote to defendant insisting on part payment of the notes or a renewal. On March 25, 1927, defendant answered, saying:

''I have been considering the legal phase of my case against Cook and Vanden Boom and think if I gave you a new note at this time it would jeopardize my case against them, in that they would plead I recognized $100,000 value in Drakehurst after I was in possession of all the facts. I trust you will see the reasonableness of my position in the matter and await the decision of the court in the case, which we hope for at an early date.''

On March 28, 1927, plaintiff wrote that Mr. Spaulding, defendant's attorney, did not consider the defendant's position above mentioned well taken and again urged part payment or renewal. On April 3, 1927, the defendant wrote:

"Replying to yours of March 28 regarding my past due paper held by you. Will say, so long as there is a question as to how the court would hold if I did as you request with the labor of a life time involved to me and a comparative small inconvenience to yourself involved I feel if I make an error it should be on the side of safety as it does not affect the validity of my notes you already have. Hoping on further consideration you will see the magnitude of the mistake if I made one and not insist on any change in the paper at this time."

On May 17, 1927, plaintiff wrote to defendant that it would commence suit upon the notes unless defendant would do something about them. On May 20, 1927, defendant wrote in response:

"We have Cook's Vanden Boom's depositions taken so now I am enclosing note to First National Bank Evanston as renewal for the commission notes dated May 15, 1927. * * * Have my old notes canceled and forward to me here."

In this letter was included a new note due six months after date for $2683.34, signed by defendant and his wife and marked in defendant's handwriting "Commission note. Renewal May 15, 1926 notes." This is the note on which suit was brought in the instant case on January 25, 1928. In that case the defendant introduced in evidence the record including the pleadings and the judgment in the Vanden Boom case and he also introduced some independent testimony tending to show fraud of Vanden Boom in the making of the exchange of the properties heretofore mentioned. But it was specifically admitted that the Hatten Realty Company was in no way connected with such fraud and was wholly blameless and free from wrong, and the only defense made was that the note in suit was without consideration. Judgment in the case was rendered in favor of the plaintiff and the instant appeal is taken therefrom. It will be noticed that at the time the renewal note was given, defendant had

full knowledge of the defense which he then had, if any, to the original notes:

1. Defendant, in support of his claim that the original notes were void for want of consideration, relies upon McCarthy v. Reid, 237 Mass. 371, 129 N. E. 675, 12 A. L. R. 1000, which holds that if an agent procures a purchaser who induces his principal to enter into a contract through fraud, he is not entitled to a commission when the principal has repudiated the transaction by reason of the fraud. Plaintiff claims that DeWeese v. Brown, 55 Colo. 430, 135 Pac. 800, and Lockwood v. Halsey, 41 Kans. 166, 21 Pac. 98, are contrary to the case of McCarthy v. Reid, and that they announce the better law. The case at bar, however, presents other facts, also relied on by plaintiff, which were not present in the cases just cited, and among them is the fact of the renewal of the notes given for the commission, with knowledge of the fraud. We shall, accordingly, proceed to consider the bearing of that fact on the case at bar, without deciding whether McCarthy v. Reid, or the cases claimed to be contrary thereto, represent the better law. It is somewhat strange, in view of the innumerable sales and exchanges constantly made through agents, that no case can be found in the books in which the question of renewal has come up in connection with the commission of such agents. A number of cases, however, have passed on the effect of renewals generally. These are collected in notes in Ann. Cas. 1916A 826 and 35 A. L. R. 1270 to 1289. On page 1270 of the latter it is said:

"Where the maker of a note against which there is available a defense — other than one opposed to public policy—executes a renewal note with knowledge of the defense, the great majority of the cases hold that his right to set up the defense is thereby cut off. The execution of the renewal note is treated as a waiver of the defense or as creating an estoppel against the maker."

And again, on page 1277 of the same book, it is said:

"The execution of a renewal note with knowledge that the consideration for the original is faulty precludes the maker from setting up the defense of failure of consideration in an action on the renewal note. The execution of the renewal note is a waiver of said defense, or, as is sometimes said, estops the maker."

Counsel for the defendant impugn the correctness of these statements, attempt to distinguish the cases cited from the case at bar, and rely upon the minority rule stated, in some of the cases also found cited in the foregoing notes, and they contend that since the original notes were founded on no consideration, neither can the renewal note be. They argue, in the first place, that the cases holding that a renewal note given for one which was based on fraud, are not in point; that all the cases cited in that connection involved fraud between the parties to the note, whereas in the case at bar no fraud as between the parties hereto is involved. That distinguishing feature, it is true, exists. Whether the distinction is vital is another matter, and we think it is not. Fundamentally, the claim on the notes sued on herein is resisted by reason of fraud, fully known to defendant when the renewal note was given. The want or failure of consideration, if any, arose directly out of the fraud of Vanden Boom and could have no separate existence outside of that. The interlocking of these two facts and the dependence of one on the other was clearly discerned by defendant and recognized by him in a letter of March 25, 1927, doubtless inspired by the advice of counsel. If the defendant had permitted the transaction with Vanden Boom to stand instead of repudiating it, there could be no question as to the liability for the commission. Hence, the claim that the original notes were void from the beginning, because of want of consideration, cannot be correct. At most, they were voidable. Defendant, when he had full knowledge of Vanden Boom's

fraud, had the right, if he wished, to treat the notes as valid. The plaintiff had rendered its services. It did all that it could do, and was guilty of no fraud. We can see no valid reason why, if the defendant wanted to compensate the plaintiff for these services, he should be held to have no right to do so. When he failed to repudiate the commission notes at the time of the renewal, he virtually thereby condoned Vanden Boom's fraud in so far as the plaintiff, and plaintiff's claim, were concerned, and with that fraud condoned, the claim of want of consideration necessarily falls, if the rule of the cases cited in the foregoing notes is correct.

Counsel for the defendant further argue that the cases cited to the effect that the execution of a renewal note waives the defense of want or failure of consideration are not in point, for the reason that only a partial and not a total failure of consideration was involved therein. That is true in a number of the cases. But counsel have failed to point out why a distinction should be drawn. The rule is based on waiver, or, as some say, estoppel, not on whether the want of consideration is partial or total. If public policy permits waiver of the one, but forbids waiver of the other, we should have to inquire—which has not been done in any of the cases—as to the percentage or fraction of consideration which a man may waive. If fraud, nay, forgery, conceived by an evil mind, may be waived, as held by the cases cited in the foregoing notes, surely no sound basis exists for denying the ability to do so in case of want of total consideration, for, aside from the duty which a man owes to his family and his creditors, he is not forbidden to make a gift of his property, if he wishes. And so we find that a number of authorities have not made the distinction which counsel for the defendant have attempted to make, even though in some of them there was actually only a partial failure of consideration. And fraud and want of consideration

are, for the reasons already pointed out, frequently put on the same basis. In Daniel on Negotiable Instruments, (6th Ed.) Sec. 205, it is said:

"And if the original instrument was obtained by fraud, a renewal of it by the original parties without knowledge of the fraud would stand upon the same footing. But if, at the time the renewal was executed, the parties signing knew of the fraud in the original, or of the failure of consideration, they will be regarded as purging the contract of the fraud or of the defense of failure of consideration and cannot then plead it."

In Joyce, Defenses to Commercial Paper, 2nd Ed., Sec. 362, the author says:

"The principal cannot defeat a recovery upon a renewal note by setting up a failure of consideration where a waiver of the right to take advantage of the defects based upon facts existing at or about the time of the maturity of the original note and before the renewal, which facts were then fully known to the principal, especially so when in addition to giving the new note he had repeatedly in writing acknowledged his liability both before and after giving the new note."

In Hunter, Evans & Co. v. Lanius, et al., 82 Tex. 677, 686, 18 S. W. 201, 205, it was said:

"When one executes an obligation in renewal of a note claimed by the holder to be valid but known by the maker to be fraudulent, the latter will be deemed to have purged the transaction of the fraud and to have waived the want of consideration and will not be permitted to plead it."

In American National Bank v. Jorden, 123 Okl. 151, 254 Pac. 706, 709, the defendant claimed total failure of consideration, but the court, citing cases involving only partial failure, said:

"The original note was afterwards renewed by the giving of the note sued on, and his conduct in that regard estops him from asserting the invalidity of the note for want of consideration."

In Allen v. Bank, 133 Okl. 14, 270 Pac. 838, 840, the defendant contended that the note given by him was void "for the reason that no consideration was received by him." The court said:

"Some contention is also made by the defendant that the original note was without consideration. The finding of the jury on this question is also conclusive, yet if this were not true he would be estopped from making such defense by reason of the subsequent renewals of said note with full knowledge of all the facts."

In Monfort v. Guano Co., 108 Ga. 12, 33 S. E. 636, 637, the defendant gave a note for guano, the quality of which had been guaranteed, but which proved to be wholly worthless, causing defendant to lose his crop. He afterward renewed the note. The court, relying on a case which involved only partial failure of consideration, said in part:

"Having renewed the note at the time when he had had full knowledge that his crop was a failure and without taking any steps to ascertain whether the guaranteed analysis corresponded with the official analysis, we do not think that he should be allowed now to set up as a defense facts which he either knew or could by the exercise of a slightest diligence have known when the note was renewed. * * * While not within the letter of the decision in American Car Company v. Atlanta Street Railway Co., 106 Ga. 254, 28 S. E. 40, and the cases there cited, the case certainly falls within the principle there ruled."

In Hagan v. Brown & Co., 112 Ga. 662, 37 S. E. 880, the defendant claimed that the original note given by him was for property either defective or wholly worthless. He

84

renewed the note and the court applied the same rule above mentioned. In Haglin v. Friedman, 118 Ark. 465, 177 S. W. 429, total failure of consideration was claimed and the court held that the defendant, having renewed the original note, waived the defense in that respect. In William Barco & Son v. Forbes, 194 N. C. 204, 139 S. E. 227, the defendant was held to have waived the defense of total failure of consideration by renewing the note which he had given, the court saying:

"The question is this: If a note is given for the purchase price of fertilizer, and there is a total or partial failure of the consideration, and the maker of the original note executes a renewal note, after knowledge of the failure of the consideration, can such maker resist the payment of the renewal note? When the fertilizer was purchased in 1922, the defendant gave a note for the purchase price. The evidence discloses that the time for harvesting the crop was in July or August, 1922, and that the potatoes were dug at the time. It is obvious, therefore, that in August, 1922, the defendant had full knowledge of the fact that the fertilizer was worthless and that there was a total failure of the consideration for the note executed by him and delivered to the plaintiffs. However, notwithstanding, on January 23, 1923, he executed and delivered to the plaintiffs the renewal note, upon which the suit was brought. In Bank v. Howard, 188 N. C. 550, 125 S. E. 129, Connor, J., declared the law as follows: 'One who gives a note in renewal of another note, with knowledge at the time of a partial failure of the consideration for the original note, or of false representations by the payee, waives such defense and cannot set it up to defeat or to reduce the recovery on the renewal note.' * * * These principles of law support and justify the judgment entered in the cause."

In Sheffield v. Harvesting Machine Co., 3 Ga. App. 374, 59 S. E. 1113, 1114, the court said among other things:

"A renewal or an extension of time of payment constitutes a sufficient consideration for a waiver on the part of

the vendee of any breach of warranty, or of any failure of consideration of the article purchased and for which he gave his promissory note in the first instance. While we are inclined to the opinion that a mere extension of time of payment does not itself estop the maker of the note from setting up as a defense a total failure of consideration, yet, where the evidence discloses the fact of his knowledge of such failure of consideration at the time that he gave the renewal note, and in the renewal note he expressly waives any failure of consideration or any claim arising on account of failure of consideration, we think he would unquestionably be bound.''

While the waiver in the case at bar was not express, the facts and circumstances herein show the equivalent thereof. Nor was there a failure of consideration for the renewal note, if any was necessary in addition to the services rendered by the defendant. The renewal note was given by the defendant in order to prevent a threatened suit. Up to that time he had not disputed the validity of the plaintiff's claim, but had acknowledged it as well-founded. The original notes were, as already shown, at most voidable and not void. The plaintiff had acted as agent for the defendant and had rendered actual services not tainted by any fraud. The time of payment was extended. The extension was given largely for defendant's benefit. The old notes were cancelled and delivered to defendant. The giving of the renewal note (as also the original notes) placed the defendant in position where he was able to testify that he had paid plaintiff, and he had thereby obtained a judgment against Vanden Boom. These facts, we think, were the basis for a sufficient consideration for the renewal note. See 8 C. J. 236, 238; note, 35 A. L. R. 1285.

2. The fact that the defendant recovered judgment against Vanden Boom for the amount of money in dispute herein, and that he claimed and testified that he had paid it to the plaintiff, add an element not present, so far as

we have found, in any of the cases on this subject. Counsel for the plaintiff says that if the defendant's present contention is correct, he committed a fraud on the court in the Vanden Boom case and that he should be held to be estopped herein for that reason. Counsel for the defendant claim that this matter is not involved in the case at bar on the theory of an estoppel, because not pleaded. But the defendant himself introduced most of the evidence on that point. The remainder was admitted without objection, and we should, accordingly, if necessary, consider the plaintiff's reply as amended so as to cover the point. Washburn v. Surety Company, 38 Wyo. 530, 534, 269 Pac. 27 and cases cited. It is further claimed, however, that defendant merely took precautions against loss in the Vanden Boom case, and that in any event, he would, if he collected the money from Vanden Boom, and having won in this case, be compelled, in equity, to pay such money over to the plaintiff. This claim is evidently made on the theory that plaintiff might have sued Vanden Boom for its commission. They cite 2 R. C. L. 749; Livermore v. Crane, 26 Wash. 529, 67 Pac. 221, 57 L. R. A. 401; Littlefield v. Bowen, 90 Wash. 286, 155 Pac. 1053. The Washington cases seem to hold that a real estate broker who, at the instance of the owner of the property, has procured a valid contract of sale, may sue the purchaser, who fails to carry out such contract, for his commission. The majority of the courts seem to hold the contrary, on the theory that there is no privity of contract between the parties. Gibson Land Auction Co. v. Brittain, 182 N. C. 676, 110 S. E. 82, 20 A. L. R. 211, and cases cited in extended note appended thereto at 20 A. L. R. 214. Also Alverson v. McCoy, 212 Ky. 9, 278 S. W. 547; Hicks Realty Co. v. Const. Co., 219 Ky. 282, 292 S. W. 780; Johnson Realty Co. v. Newman, 210 Ala. 340, 98 So. 20. However, no question of breach of contract by Vanden Boom is involved here. The query, on the contrary, in

this connection would be, if pertinent: Could plaintiff have sued Vanden Boom for the loss of its commission because brought about by the fraud committed by the latter on the defendant? An answer in the negative would seem to be required, for the reason that the loss of the commission could not be shown to have been brought about by such fraud, since, had that fraud not been committed, and had the actual facts been disclosed, the trade presumably would never have been made, and hence the commission would not have been earned in any event. See Bird v. Rowell, 180 Mo. App. 421, 429, 167 S. W. 1172. But even if a suit of that character could have been maintained by plaintiff against Vanden Boom, a further query would be: Could defendant, who owes plaintiff nothing (as contended) be compelled to pay him an amount justly or unjustly collected from Vanden Boom? See Adams v. Dieren, 92 Mo. App. 129. These points are at least gravely doubtful, and greater safety might have been given plaintiff, if the matter is at all of importance, if defendant had made or offered to make an assignment of so much thereof as represents the commission of plaintiff. But that was not done. Counsel further says that if they should collect the money they should feel bound to pay the plaintiff. But the inconsistent position already occupied by defendant leaves none too great an assurance against an additional inconsistent position in the future, so that it is hardly fair to ask us to take that fact into consideration. Howsoever any of these matters may be, we cannot be led too far afield in seeking to excuse the defendant's inconsistent position, must disregard the attempted explanation, and must judge the case as we find it. The defendant took the position which he did in the Vanden Boom case deliberately. So far as the record shows he had then no thought of acting for plaintiff in collecting money from Vanden Boom, and counsel's statement in the brief that the "inclusion of the Hatten note in the Baylies claim in

the Vanden Boom rescission suit was done openly, with the knowledge of all of the nature of the claim, and with full realization by all that this item was based upon a contingent liability, and not money paid," finds no support in the record before us, except, of course, that it was done openly, thereby helping in giving assurance to plaintiff that the renewal note was given in good faith and not merely so as to defer the day to a more opportune time when the defense of want of consideration would be raised.

It is further claimed by counsel for the defendant that a position taken by a party in one suit cannot be claimed as working an estoppel in another suit in favor of a party who was a stranger to the first, but that whatever statements or admissions were made in the first suit can be used as evidence only. That appears to be the general rule. Notes, 18 Ann. Cas. 78; Ann. Cas. 1915C 735, 28 L. R. A. N. S. 327; L. R. A. 1915A 200, 5 A. L. R. 1505, see Wigmore on Evidence (2nd Ed.), Sec. 1064, dealing with pleadings only. The case at bar, however, presents one fact which does not appear, or at least not clearly, in any of the cases cited in the foregoing notes, and that is the fact already mentioned, namely, that in addition to his solemn statements under oath, defendant, as a result thereof, obtained a judgment, which is still held by him, for the specific reason that he paid the commission to the plaintiff. Now a note may be taken and accepted as payment, if that is agreed between the parties. Daniels, Negotiable Instruments (6th Ed.) Sec. 1259. And there is nothing in the record except defendant's statements under oath, that the original notes were given, not merely to evidence the amount due for the commission, but in absolute discharge thereof. So a new note may be given in renewal or in payment and discharge of the original. 8 C. J. 571. And on that point we find in the record on the one hand that the new note was marked "renewal"

while on the other hand we find the solemn position taken by the defendant in the Vanden Boom case, and of course if the amount due for the commission was actually paid and extinguished, as defendant maintained in the Vanden Boom case, or the renewal note was given with a similar specific intention, then the subsequent transaction constituted a new debt, or a new promise. Walker v. Dunham, 135 Mo. App. 396, 115 S. W. 1086; Erlandson v. Erskine, 76 Mont. 537, 248 Pac. 209; Fidelity State Bank v. Miller, 29 Ida. 777, 162 Pac. 244. And an extinguished debt cannot well admit either of a suit thereon or of a defense thereto. We may, however, leave unnoticed the point as to whether, under a familiar rule of appellate procedure, the judgment of the trial court should not be upheld upon the theory that there is substantial evidence, and in some respects uncontradicted evidence, showing such payment and extinguishment, and may go further and ask whether, under the facts of the case, the defendant should now be permitted to claim the contrary? And in this connection we shall briefly consider the cases which have adopted the doctrine of what has become known as judicial estoppel. In Tennessee it is held that where a man states on oath in a former litigation, either in a pleading or in a deposition or in oral testimony, a given fact as true, he will not be permitted to deny that fact in a subsequent litigation, although the parties may not be the same, unless he can show that the statements made, were made inconsiderately, by mistake or without full knowledge. Tate v. Tate, 126 Tenn. 169, 212, 148 S. W. 1042. See review of the rule in 1 Tennessee Laws Review 1-29. In McLemore v. Railroad, 111 Tenn. 639, 665, 69 S. W. 338, 344, the court said:

"The law of judicial estoppel is firmly established in this State, and may be invoked by any one, regardless of whether any rights have been prejudiced by the conduct of some one else which, it is claimed, constitutes the

estoppel. The policy of the law will not permit any one to gainsay what he has deliberately sworn to in the course of a judicial proceeding. The doctrine is thus stated in the leading case of Hamilton v. Zimmerman, 5 Sneed. 48. 'This doctrine is said to have its foundation in the obligation under which every man is placed to speak and act according to the truth of the case, and in the policy of the law to suppress the mischiefs from the destruction of all confidence in the intercourse and dealings of men, if they were allowed to deny that which by their solemn and deliberate acts they have declared to be true. And this doctrine applies with peculiar force to admissions or statements made under the sanction of an oath, in the course of judicial proceedings. The chief security and safeguard for the purity and efficiency of the administration of justice is to be found in the proper reverence for the sanctity of an oath.' ''

In Fisher v. Denver National Bank, 22 Colo. 373, 45 Pac. 440, 442, the court held that a position taken by the defendant Fisher in a former suit, to which plaintiff was a stranger, did not estop him from taking a different position in a subsequent suit when the former suit was dismissed and he was not successful in his position taken therein. But the court said also:

"Had Fisher been successful, or obtained some advantage, the rule (of estoppel) would apply."

A number of cases from Louisiana for and against the rule of such estoppel are found collected in the case of Farley v. Frost Johnson Lumber Co., 133 La. 497, 63 So. 122, L. R. A. 1915A 200. To these cases should be added, as favoring estoppel, Howell v. Sheriff, 27 La. App. 701. In McDonald v. Long (W. Va.) 131 S. E. 252, 253, the following pertinent facts, abbreviated, appear: A milling company owned some land of which it made or attempted to make a sale to a man by the name of Long. The latter then repudiated the sale. Thereafter a majority of the stockholders brought an action for the appointment of a

receiver for the milling company and to dispose of the milling property, stating among other things that the company had at one time thought they had consummated a sale with Long but that it had not yet been accomplished. The stockholders who were not plaintiffs were made defendants. Among them was Long. A receiver was appointed in that proceeding, and he subsequently brought suit against Long to enforce the above mentioned contract of sale. The court held him estopped, but apparently without reference to the fact that Long had been a party— as stockholder—to the stockholders' suit, and said in part:

"The corporation and stockholders, having elected to waive any rights they might have asserted against defendant on account of the alleged sale, are bound by their choice. No reason or explanation for the attempted change of position is suggested. Parties will not be permitted to assume successive inconsistent positions in the course of a suit or series of suits in reference to the same fact or state of facts."

In McAuslen v. Union Trust Co., 46 R. I. 176, 125 Atl. 296, 301, decided in 1924, a case very closely in point here, the Supreme Court of that state clearly adopted the so-called rule of judicial estoppel. It appears that John McAuslen, deceased, had left a trust which had been administered by his widow and one son for the benefit of themselves and other children of the deceased, some of whom were then minors. The trustees borrowed money from the Manufacturers Trust Company, whose position was later taken by the Union Trust Company, in the sum of $100,000, of which $10,000 was repaid, leaving due $90,000, secured by 1125 shares of stock. After all the children were of age, the plaintiffs herein brought an action entitled McAuslin v. McAuslin against the trustees for an accounting. In that proceeding a master was appointed who recognized the validity of the indebtedness

of $90,000 above mentioned. No exception was taken to the report but it was confirmed on request of plaintiffs. Subsequently they sued the Union Trust Company, claiming that the trustees had no power to borrow the $90,000 and deposit the shares of stock above mentioned. The court held the plaintiffs estopped and said in part:

"In McAuslan v. McAuslan, in the Superior Court, the master was directed, among other things, to report the indebtedness of the estate at the time of the appointment of the receiver February ·17, 1910, and also the indebtedness of the trustees to the estate. The master's determination as to the indebtedness of the trustees would involve, among other things, his finding as to whether the $90,000 now in question, and the other borrowings of the trustees, constituted obligations of the estate or of the trustees. From the evidence produced before him by the complainants, the master assumed and ruled, for the purpose of his report, that the borrowings of the trustees were liabilities of the estate. Among these liabilities of the estate he includes the whole of $90,000, borrowed from the Manufacturers' Trust Company. It is upon the basis of such assumption that he determined the amount of indebtedness from the trustees to the estate. This report of the master, as we have stated above, was not the subject of exception by these complainants; on their motion it was confirmed in the superior court, and a decree was entered in their favor in which they are adjudged to be entitled to receive from the trustees all the proceeds of the pledge not properly used for the benefit of the estate. In this case the position of the beneficiaries, who are the real complainants, is inconsistent with their acts and the decree which they had entered in their favor in McAuslan v. McAuslan. They cannot be permitted to obtain an advantage here upon an entirely contradictory contention. This is not on the doctrine that the decree in McAuslan v. McAuslan is *res adjudicata* of which the respondent trust companies may avail themselves, but upon the principle that, having obtained an advantage in the superior court upon one position, the complainants should not be permitted to obtain a decree from that court in another proceeding relating to the same matter, upon an entirely

inconsistent and contrary claim. The rule is stated in 2 Black on Judgments, § 632, as follows: A party is forbidden 'to assume successive positions, in the course of a suit or series of suits, in reference to the same facts or state of facts which are inconsistent with each other or mutually contradictory.' See McDonald v. Rainer, S. Johns. 442. In Davis v. Cornwall, 68 Fed. 522, 525, 15 C. C. A. 559, the court refers to this principle on 'the salutary doctrine of estoppel, which prohibits parties from playing fast and loose with courts of justice.' "

See also Kintner v. Communication Company, 240 Fed. 716 (C. C. A.), and American Metal Cap Co. v. Anchor Cap etc. Co., 278 Fed. 670 (reversed on another point). In the first of these cases, the syllabus reads:

"Where a patentee has secured a decree from one court sustaining his patent on a particular theory advanced by him, he cannot in another suit, in which the evidence disclosed anticipation on that theory, abandon it and successfully contend for an inconsistent theory."

It thus appears that while as a general rule a position taken by a man in one proceeding is merely evidence and cannot work an absolute estoppel in another proceeding in favor of a stranger to the first, yet, though the Tennessee courts probably go too far, the foregoing cases tend to show that such evidence may at times, in cases in which, as here, a man is successful in the position taken in the first proceeding, rise to the dignity of conclusiveness. The instant case presents facts much stronger than those herein cited. There was not only a solemn acknowledgment of the correctness of the plaintiff's claim, but defendant claimed and swore that he paid the plaintiff and as a result thereof he obtained a judgment against Vanden Boom, which he still holds. It would be highly inequitable for the defendant herein to have such judgment, and at the same time be held to be relieved from paying plaintiff. That this judgment has not been paid

should not alter that fact, for he is placed in position to collect it. Taking all the facts and circumstances of this case into consideration, we think we are constrained to hold, not only that the defendant waived whatever defense he had to plaintiff's notes, but also that he should not be permitted to take the position which he has taken in the present case. The judgment of the trial court should accordingly be affirmed, and it is so ordered.

*Affirmed.*

KIMBALL and RINER, JJ., concur.