**R.A. GILBREATH and Esther Gilbreath, Appellants (Plaintiffs),**

v.

**Lenora WALLACE, Maxey Wallace, her husband, Doris Huckfeldt, Fredrick Huckfeldt, her husband, Helen DeGering, Alma Grace Lemons, Ernest Lemons, her husband, Appellees (Defendants).**

No. 86–272.

Supreme Court of Wyoming.

June 25, 1987.

George A. Clarke, Lusk, for appellants.

Doyle J. Davies, Lusk, for appellees Wallaces, DeGering, and Lemonses.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

The trial court granted defendants summary judgment in this suit for reformation of a deed. We affirm.

Plaintiff Esther Gilbreath and defendants Lenora Wallace, Doris Huckfeldt, Helen DeGering and Alma Grace Lemons are the daughters of Walter L. and Nora Eva Klemke, both deceased. The other named parties are husbands of the women. In 1968, the Klemkes and Gilbreaths signed an Agreement for Warranty Deed providing for a conveyance of some 1200 acres of land in Niobrara County to Esther Gilbreath and her husband. The agreement did not reserve minerals to the Klemkes. The warranty deed, executed pursuant to the agreement, did reserve the minerals. It was not seen by Gilbreaths before being placed in escrow. Walter Klemke, the surviving parent, died in 1976. During the probate of his estate, the Gilbreaths acknowledged his ownership of the mineral estate. The Gilbreaths' attorney, George A. Clarke, wrote to the attorney for the estate on December 30, 1977:

"We must also object to the appraisal of the oil, gas and mineral rights shown on Schedule A of the * * * Inventory and Appraisement. In the deed to the Gilbreaths, which has been escrowed with the Stockmans National Bank, mineral rights were reserved. * * * [T]his property has never, in its history, been leased for minerals of any sort. Many years ago, the Wyoming Supreme Court stated * * * that mineral rights in an unproven area were totally speculative and therefore without value."

The reserved mineral interest was distributed as part of the estate, each daughter receiving a one-fifth share.

On November 8, 1985, plaintiffs Gilbreath filed this suit seeking reformation of the deed to omit the reservation of minerals, alleging mutual mistake and fraud. The district court granted the defendants' motion for summary judgment on grounds of res judicata and collateral estoppel. The plaintiffs have appealed, claiming that the trial court improperly granted summary judgment.

It is well established that this court will uphold the action of the district court for any proper reason appearing of record. *Walker v. Karpan*, Wyo., 726 P.2d 82 (1986); *Ely v. Kirk*, Wyo., 707 P.2d 706 (1985); *Walter v. Moore*, Wyo., 700 P.2d 1219 (1985); *Anderson v. Bauer*, Wyo., 681 P.2d 1316 (1984). In the case at bar, that proper reason is the doctrine of judicial estoppel.

"The principle, while denominated judicial estoppel, is sometimes referred to as a doctrine which estops a party to play fast and loose with the courts or to trifle with judicial proceedings. It is an expression of the maxim that one cannot blow hot and cold in the same breath. A party will just not be allowed to maintain inconsistent positions in judicial proceedings, as here. 31 C.J.S. Estoppel § 117, pp. 624–625.

"The role of judicial estoppel has been accepted in this state. *Hatten Realty*

*Co., v. Baylies,* 1930, 42 Wyo. 69, 89–93, 290 P. 561, 72 A.L.R. 587. It was there held that where a man is successful in a position taken in a previous court proceeding, that position rises to the position of conclusiveness. It constitutes a solemn and sworn acknowledgement of the correctness of plaintiff's claim. Following the same reasoning reached in Hatten, it would be highly inequitable for the defendant to have a decree in his divorce case holding the property not to be his and at the same time be held the owner of an interest in this proceeding. It is that very inconsistency that judicial estoppel will not tolerate. Defendant's statements in the previous action are the very highest order of evidence against him and are entitled to judicial sanctity. He cannot play hanky-panky with the courts of this state and thus interfere with the integrity of the judicial system. See *Parkinson v. California Co.,* 10 Cir. 1956, 233 F.2d 432, 437–438, for a discussion of Hatten.

"We are not a bit concerned that the matter of judicial estoppel was not raised in the lower court or argued by either of the parties. This court has general superintending control over all the courts of the state and the Wyoming judicial system in general. It is our duty to protect its integrity and prohibit dealing lightly with its proceedings. We are at liberty to decide a case upon any point which in our opinion the ends of justice require, particularly on a point so fundamental that we must take cognizance of it." (Footnotes omitted.) *Allen v. Allen,* Wyo., 550 P.2d 1137, 1142 (1976).

Wyoming continues to adhere to this position. *Gray v. Fitzhugh,* Wyo., 576 P.2d 88 (1978); *Snell v. Ruppert,* Wyo., 582 P.2d 916 (1978); *Amfac Mechnical Supply Company v. Federer,* Wyo., 645 P.2d 73 (1982).

Here, plaintiffs Gilbreath acknowledged Walter Klemke's ownership of the mineral estate in the 1977 probate proceedings, thus conceding the deed was correct. Now they claim that the deed reserving the interest to him was the result of mutual mistake or fraud. It is just such inconsistent positions the doctrine of judicial estoppel is intended to prevent. Defendants were entitled to judgment as a matter of law, and the court did not err in granting summary judgment.

Affirmed.