DAVIS, Chief Justice, dissenting.
[¶ 44] At ¶ 36, the majority holds:
Neither party questioned the inherent authority of the district court to enforce its order. Neither party raised any question in this appeal about the terms of the decree which the district court enforced. Considering the circumstances of this case, the district court had inherent authority to enforce its own decree.
[¶ 45] While I concur in all other aspects of the majority opinion, I do not agree that the district court acted within its enforcement authority when it ordered the Sinclair property to be placed in a trust subject to the Shawn Weeks probate proceedings. I believe that the divorce decree is too vague to support such an order, and I disagree that this Court should disregard a question so fundamental as whether the district court exceeded its enforcement authority simply because the parties chose not to address it. I therefore respectfully dissent.
[¶ 46] This Court has long rejected the idea that it is confined to the parties' framing of the issues, as well as the suggestion that it may not, when necessary, deviate from the course set by the parties.
We are not a bit concerned that the matter of judicial estoppel was not raised in the lower court or argued by either of the parties. This court has general superintending control over all the courts of the state and the Wyoming judicial system in general. It is our duty to protect its integrity and prohibit dealing lightly with its proceedings. We are at liberty to decide a case upon any point which in our opinion the ends of justice require, particularly on a point so fundamental that we must take cognizance of it. (Footnotes omitted.) Allen v. Allen , Wyo., 550 P.2d 1137, 1142 (1976).
Gilbreath v. Wallace , 738 P.2d 717, 719 (Wyo. 1987) ; see also Bourke v. Grey Wolf Drilling Co., LP , 2013 WY 93, ¶ 38, 305 P.3d 1164, 1173 (Wyo. 2013) (quoting In re WJH , 2001 WY 54, ¶ 48, 24 P.3d 1147, 1160 (Wyo. 2001) ("This issue was not developed below, but '[w]e are at liberty to decide a case upon any point which in our opinion the ends of justice require.' "); Baker v. Speaks , 2013 WY 24, ¶ 61, 295 P.3d 847, 861 (Wyo. 2013) ; Meuse-Rhine-Ijssel Cattle Breeders of Canada LTD v. Y-Tex Corp. , 590 P.2d 1306, 1309 (Wyo. 1979) ("There is no reason to keep secret the proper law applicable to a case just because overlooked.").
[¶ 47] Along these lines, Justice Blume observed years ago:
We think that the question decided by this court was squarely before us. If some feature was overlooked by counsel for appellant, or was not deemed important, that could not limit this court in deciding the point. And we might say parenthetically that we have not infrequently found that were we to limit our decisions strictly and literally to the arguments advanced by counsel in a case, the law in this jurisdiction would be in a sorry state.
*741 Chicago & N.W. Ry. Co. v. City of Riverton , 70 Wyo. 84, 247 P.2d 660, 663 (Wyo. 1952).[7]
[¶ 48] The action before the district court, insofar as it relates to the trust, was an action to enforce a 1984 divorce decree, which tasked the court with interpreting and enforcing the decades-old decree. Whether the decree's trust provision is too vague to be enforced in the manner requested was thus fundamental and squarely before the district court, regardless of the parties' inattention to the question. That issue having now been placed squarely and glaringly before this Court, I believe it must be addressed. I also believe the answer is clear-the district court exceeded its enforcement authority when it ordered the Sinclair property to be placed in a trust to benefit the Shawn Weeks estate.
[¶ 49] A court indisputably has inherent power to enforce its own judgments. Ultra Res., Inc. v. Hartman , 2015 WY 40, ¶ 11, 346 P.3d 880, 887 (Wyo. 2015). That power, however, is "limited to interpretation and clarification of orders and enforcement of their terms. In doing so, the court must stay true to the earlier judgment." Id. ¶ 14, 346 P.3d at 887. While a court may clarify an order for purposes of enforcement, the clarification must adhere to the court's original intent as reflected in contemporaneous proceedings. Tafoya v. Tafoya , 2013 WY 121, ¶ 11, 309 P.3d 1236, 1239 (Wyo. 2013). A clarification may not result in a substantive alteration of the order being enforced. Id . ¶ 21, 309 P.3d at 1241.[8] ,[9]
[¶ 50] The 1984 divorce decree directed that the Sinclair property be placed in a trust for the benefit of Shawn Weeks, with Mr. Weeks retaining possession of the property. It further provided that any rental proceeds in excess of the mortgage were to be placed in the trust. Beyond that, the decree provided no direction concerning the trust. It did not specify when the trust was to terminate, when or if Shawn was to obtain possession of or title to the property, whether Shawn's interest in the property, if any, would vest if he predeceased his father, or who was to be the successor or contingent beneficiary(ies) in the event Shawn were to die before the trust terminated, or as it happened, before the trust was created.
[¶ 51] Although the record contains affidavits attesting to Mr. and Mrs. Weeks' intentions with respect to the trust and how it might operate, those intentions are not material to this inquiry. This was an action to enforce a court order, so the relevant inquiry is not what the parties intended, but rather what the trial court intended when it ordered creation of the trust. See Tafoya , ¶ 14, 309 P.3d at 1240 (quoting Glover v. Crayk , 2005 WY 143, ¶ 10, 122 P.3d 955, 958 (Wyo. 2005) ) (goal in interpreting and enforcing order "is to effectuate the contemporaneous intent of the court and to ensure that the judgment reflects that intent").[10]
*742 [¶ 52] A search of the record for what the trial court intended with respect to the trust terms comes up empty. Not only is the divorce decree itself silent with respect to the vesting of interests in the Sinclair property, nothing in the contemporaneous proceedings offers clarification. The discussion of the property during the 1984 divorce proceedings was sparse, consisting of only one on-the-record exchange:
[Counsel for Mr. Weeks]: There is real estate in Sinclair. This property would be put in trust for the boy, with Mr. Weeks making the monthly payments thereon.
Mr. Weeks will have possession of the property from today through 6:00 p.m., the day after Christmas, December 26th, at which time Mrs. Weeks will have possession of the property until she leaves for Colorado or February 1st, 1983, whichever should occur first-excuse me, 1984, or whichever would occur first. From that time forward, Mr. Weeks would have the right to maintain possession of the house. Should he decide to vacate the premises, the house would be rented and Mr. Weeks would make up the difference in payments between the rent and the mortgage payment, if there was. If there were to be a surplus in the rent over the mortgage payment, that money would go into the trust account for the son.
* * * *
[Counsel for Ms. Weeks-Rohner]: * * * Your Honor, the only other things that I'm not sure were mentioned is Mr. Weeks, I understand, will be responsible for the upkeep of the house.
[Counsel for Mr. Weeks]: Right. He'll keep the house up.
THE COURT: Well, if you're going to live there, why, it would seem to follow.
[¶ 53] The divorce decree was entered over thirty-four years ago, and the circumstances under which Ms. Weeks-Rohner now seeks to enforce the decree are plainly different from those that existed in 1984. It ordered no more than placement of the Sinclair property in a trust with the rental income to benefit Shawn Weeks. It contained no terms to address circumstances like those now before this Court, and nothing in the original court's contemporaneous discussion with counsel suggests that the court contemplated the present scenario when it ordered the trust, or that the court intended to address such circumstances.
[¶ 54] I would thus conclude that under the present circumstances, the divorce decree offers no basis on which the district court could order the creation of a trust and the placement of the Sinclair property in that trust. Creation of a trust requires a definite beneficiary. Wyo. Stat. Ann. § 4-10-403(a)(iii) (LexisNexis 2017). The only beneficiaries contemplated by the decree were Shawn Weeks, as an income beneficiary, and Mr. Weeks, as a possessory beneficiary. Both were deceased when the district court issued its enforcement order, which forced the court to create a new beneficiary, the Shawn Weeks estate. The difficulty there, of course, is that the decree did not identify the Shawn Weeks estate as a beneficiary under the trust, and, as we have explained, a court's action to enforce a divorce decree must find support in the decree's language and intent.
Crayk's formula is inconsistent with the language of the divorce decree. Crayk's formula awards her the benefit of any income increases Glover received after the first seventeen years of his military career. Crayk supports this formula by simply stating that it is fair and equitable. The validity, let alone the "equity," of Crayk's formula is not the issue. The real issue is *743 the intent of the divorce decree. Nowhere does Crayk present her formula within the context of the language of the decree. Upon review, we find no indication that the divorce decree anticipated Glover's retirement calculation to be based upon sums yet to be accrued. Instead, the divorce decree speaks of sums already accrued. Indeed, the decree expressly defines the time frame for accrual as the first seventeen years of Glover's military service. Under these circumstances, we hold that the district court erred in adopting Crayk's formula
Glover , ¶ 13, 122 P.3d at 958.
[¶ 55] In creating a new beneficiary, the district court substantively altered the 1984 divorce decree and exceeded its enforcement authority. Additionally, as a practical matter, I am not convinced that the creation of a trust and placement of the Sinclair property in the trust achieved any finality in the dispute over the property. The new trust is as sparsely defined as the 1984-ordered trust. We are again left with the unanswered questions of: the type of interests the estate or Shawn Weeks' heirs and beneficiaries hold in the property; how long the trust is to last; the events that will trigger the trust's termination; and how the property is to be disposed of upon the trust's termination. The ordered trust appears to do little more than place a cloud on the property's title.[11]
[¶ 56] Under these circumstances, I would reverse that portion of the court's order that directed the parties to place the Sinclair property in a trust for Shawn Weeks, subject to his probate. I would leave in place the district court's order quieting title to the Sinclair property in both parties with each owning an undivided one-half interest as tenants in common, but vacate that portion of the ruling requiring the parties to transfer their interest in the property to a trust to benefit Shawn Weeks and his heirs and/or beneficiaries.[12]

I do not intend to suggest that this Court should lightly resolve an appeal on grounds not presented to the district court or argued by the parties. I agree with the observation of Justice Scalia:
Finally (and relatedly), I must acknowledge that the basis for reversing the Court of Appeals on which I rely has not been argued by the United States, here or below. The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one. See United States v. Pryce , 291 U.S.App.D.C. 84, 96, 938 F.2d 1343, 1355 (1991) (Silberman, J., dissenting in part). Even so, there must be enough play in the joints that the Supreme Court need not render judgment on the basis of a rule of law whose nonexistence is apparent on the face of things, simply because the parties agree upon it-particularly when the judgment will reinforce error already prevalent in the system. See, e.g. , Arcadia v. Ohio Power Co. , 498 U.S. 73, 111 S.Ct. 415, 112 L.Ed.2d 374 (1990). I think that is the case here.
United States v. Burke , 504 U.S. 229, 246, 112 S.Ct. 1867, 1877, 119 L.Ed.2d 34 (1992) (Scalia, J., concurring).

Tafoya addressed the restrictions applicable to a W.R.C.P. 60(a) clarification of a divorce decree, not an enforcement order. In Ultra Resources , however, we noted that a court's authority to enforce its orders includes the authority to clarify, subject to the same restrictions applicable to a Rule 60(a) clarification. Ultra Res. , ¶ 14, 346 P.3d at 887.

At this point, Jack Weeks, Shawn Weeks, the judge who entered the decree, and one of the original attorneys have passed away.

"In the absence of clear and convincing evidence to the contrary, an agreement made and entered into, in anticipation of a divorce[,] which has been incorporated or adopted by reference into a decree, is presumed to merge into the divorce decree and will no longer be in effect." Meiners v. Meiners , 2016 WY 74, ¶ 24, 376 P.3d 493, 498 (Wyo. 2016) (quoting Zupan v. Zupan , 2010 WY 59, ¶ 10, 230 P.3d 329, 332 (Wyo. 2010) ). The record contains no evidence that Mr. and Mrs. Weeks intended that their pre-divorce agreement would remain enforceable separate and apart from the divorce decree. Thus, even in the face of an ambiguity, parol evidence of Mr. and Mrs. Weeks' intentions is not material-and, of course, parol evidence of Mr. and Mrs. Weeks' subjective intentions would not in any event be admissible. See Thornock v. PacifiCorp , 2016 WY 93, ¶ 13, 379 P.3d 175, 180 (Wyo. 2016) (quoting Claman v. Popp , 2012 WY 92, ¶ 27, 279 P.3d 1003, 1013 (Wyo. 2012) ("Because we use an objective approach to interpret contracts, evidence of the parties' subjective intent is not relevant or admissible in interpreting a contract.") ).

If the majority is convinced that fee title to the property would have ended up with Shawn Weeks and therefore his estate after his death, it would be more practical to simply order the parties to quitclaim deed any interest they may have to Shawn Weeks' estate. The problem, of course, is that there is no way to tell if that would be proper or not. At this point, it is clear that a trust is unnecessary to protect a minor's interest in the property, as that minor has reached adulthood and passed on.

Because neither party filed a partition claim in this proceeding, the question of where this resolution would leave them is not a question presently before the Court, and I would offer no comment on the question of partition. It seems that litigation is unavoidable-under the district court's order there will be a dispute over what the trust terms are, and under my proposed resolution, there will be a partition action.